RICE v. NORFOLK & W. RY. CO.

(Circuit Court of Appeals, Sixth Circuit. May 10, 1907.)

No. 1,634.

RAILROADS—REORGANIZATION—PURCHASING COMPANY—LIABILITY.

Rev. St. Ohio 1892, § 3300, authorizes any railroad company to purchase any part or all of a railroad constructed or in course of construction by another company, if the lines are continuous or connecting and not competing, and declares that after such purchase the purchasing company shall be vested of all the rights and powers in respect to the location, construction, completion, and operation of such railroad, and shall be subject to all the "duties, obligations and restrictions" of the former company. *Held*, that a claim for breach of a contract to transport plaintiff's stone for a specified rate existing against a railroad company, whose line was purchased by defendant, was not an "obligation" which defendant was bound to perform under such section; defendant never having agreed to assume such liability.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 399, 400.]

In Error to the Circuit Court of the United States for the Southern District of Ohio.

A. T. Holcomb and Albert D. Alcorn, for plaintiff in error.
Oscar W. Newman, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. The validity of the claim sued on in this case depends upon the construction of section 3300 of the Revised Statutes of Ohio of 1892, regulating the purchase by a railroad company of a line of road of another company, continuous or connected, but not competing.

The suit was brought by the plaintiff in error, Samuel L. Rice, against the Norfolk & Western Railway Company, on a contract made by Rice with the Cincinnati, Portsmouth & Virginia Railroad Company, the predecessor of the Norfolk & Western Railway Company, by which Rice agreed to purchase and operate a stone crusher on the line of the road near Newport, Ohio, and the railroad company agreed to carry the crushed stone to points in Cincinnati, Ohio, at rates fixed by the contract. This contract was entered into on October 22, 1898. It is alleged in the petition that Rice expended $9,390.83 in the purchase and establishment of the stone crushing plant; that for a short time the Cincinnati, Portsmouth & Virginia Railroad Company complied with the contract, but on or about April 1, 1900, without any cause, and against the protest of Rice, refused to further transport the crushed stone at the rates fixed in the contract, and demanded rates in excess thereof, which Rice was compelled to pay under protest, the overcharges amounting altogether to about $1,110.17.

After this, on October 12, 1901, the defendant, the Norfolk & Western Railway Company, purchased the railroad property and franchises of the Cincinnati, Portsmouth & Virginia Railroad Company, including the line of road from Sciotoville to Cincinnati, Ohio, through the

counties of Scioto, Adams, Brown, Clermont, and Hamilton, on which was located the stone crushing plant of Rice already mentioned.

The suit was instituted August 4, 1903, by Rice, against the Norfolk & Western Railway Company, to recover the damages, claimed to be $10,000, caused by the breach of this stone crushing contract by the Cincinnati, Portsmouth & Virginia Railroad Company, and the overcharges, amounting to $1,110.17, alleged to have been collected under it by the latter company.

The purchase of this railroad was made under authority of section 3300 of the Revised Statutes of Ohio of 1892, which provides:

"Any company may * * * purchase any part or all of a railroad constructed, or in course of construction, or by another company, if the lines of road of such company are continuous or connected and not competing, upon such terms as may be agreed upon between the companies; and after such purchase, the purchasing company shall be vested of all the rights and powers in respect to the location, construction, completion and operation of such railroad, * * * including the power to acquire and appropriate property therefor, and shall be subject to all the duties, obligations and restrictions of said company," etc.

In the deed of conveyance of this railroad, there was included in the description of the property conveyed "all cash on hand, contracts, book accounts, bills receivable and assets of every kind," etc.

The plaintiff Rice takes the position that among the "contracts" mentioned and intended to be embraced in the deed of conveyance of the railroad property, along with "cash on hand," "book accounts," "bills receivable," and "other assets," was included his contract with the Cincinnati, Portsmouth & Virginia Railroad Company, and that section 3300 at the same time it vested in the Norfolk & Western Railway Company all the rights and powers in respect to the location, construction, completion, and operation of the railroad, and its branches, owned by the selling company, also subjected the purchasing company to all the "duties, obligations and restrictions" imposed by this stone crushing contract upon the selling company.

To determine this requires a construction of section 3300, and especially the words just quoted.

The original of section 3300 was enacted May 1, 1852, as section 24 of the act to provide for the creation and regulation of incorporated companies in the state of Ohio. It provided that any railroad company might aid another in the construction of its road for the purpose of forming a connection of the two roads, or might lease or purchase the road of another company, if the lines of road should be continuous or connecting, upon such terms and conditions as might be agreed upon between said companies, but no aid should be furnished or purchase perfected until the question should be submitted to and approved by the stockholders of the companies.

As thus enacted, the section came before the Supreme Court of Ohio in Campbell v. Marietta & Cincinnati R. R. Company, 23 Ohio St. 168, 188, in which the authority exercised in the purchase and operation by the Marietta & Cincinnati Railroad Company, of its branch line from Hampden to Portsmouth, Ohio, was in dispute. The court, speaking by Judge McIlvaine, said:

"This act is entirely silent as to the terms upon which the purchase road may be maintained and operated by the purchasing company. Indeed, it does not, in terms, authorize the purchasing company to maintain and operate the purchased road at all; but such authority must be implied from the grant of power to purchase, for the reason that the Legislature certainly did not intend that the purchased road should cease to be operated as a public highway. And inasmuch as no new mode of use or power of control was expressly provided, and as the power of the purchasing company to demand and receive tolls, as conferred by its own charter, is limited to roads constructed under the charter, it must be inferred that the Legislature intended the purchasing company to succeed to the powers and privileges of the vending company, and to none other."

The limitations which followed the powers of the purchasing company thus restricted are expressed in the second paragraph of the syllabus:

"(2) Where the railroad of one company is purchased by another railroad company, in pursuance of a statute authorizing the purchase, in the absence of any provision of law to the contrary, the road passes to the purchasing company subject to the same restrictions and limitations as to rates chargeable for transportation as attached to it in the hands of the vendor." 23 Ohio St. p. 168.

Section 24 of the act of May 1, 1852 (50 Ohio Laws, p. 281), as thus construed, was amended by the act of April 15, 1873 (70 Ohio Laws, p. 129), by the addition of certain sections defining the rights of dissenting stockholders, and passed into the Revised Statutes as section 3300, where it was amended March 14, 1882 (79 Ohio Laws, p. 35), so as to assume its following form, which has remained unchanged.:

"Sec. 3300. Any company may aid another in the construction of its road, by means of subscription to the capital stock of such company, or otherwise, for the purpose of forming a connection of the roads of the companies, when the road of the company so aided does not and will not, when constructed, form a competing line; any company may lease or purchase any part or all of a railroad constructed, or in course of construction, by another company, if the lines of road of such companies are continuous or connected and not competing, upon such terms as may be agreed upon between the companies; and after such purchase the purchasing company shall be vested of all the rights and powers in respect to the location, construction, completion and operation of such railroad, and of branches thereto of the company from which it purchased said railroad, including the power to acquire and appropriate property therefor, and shall be subject to all the duties, obligations and restrictions of said company; and any two or more companies whose lines are connected and not competing, may enter into any arrangement for their common benefit consistent with and calculated to promote the objects for which they were created."

It is the contention of counsel for the defendant in error that the provision that the purchasing company "shall be subject to all the duties, obligations and restrictions of said company," referring to the selling company, is merely an expression in statutory form of the rule announced in the case of Campbell v. Marietta & Cincinnati Railroad Company, 23 Ohio St. 168, and relates only to the duties, obligations, and restrictions of a public nature, imposed by law, and does not embrace obligations created by contract like that entered into between Rice and the Cincinnati, Portsmouth & Virginia Railroad Company, which could have no binding force upon the purchasing company, un-

less a special provision was made for their continuance in the contract for the purchase of the road. This was the view taken by. the court below.

It would seem to be supported by the decision in Railroad Co. v. Hinsdale, 45 Ohio St. 556, 557, 572, 15 N. E. 665, in which it was held that neither section 3300 nor section 3409, of the Revised Statutes of Ohio of 1892 conferred authority to sell and transfer a stock subscription made by the company whose road was purchased.

An examination of the Revised Statutes of Ohio of 1892 discloses provisions relating to the sale of railroad properties which may throw light upon the meaning of the provision under consideration.

The general rule is that the owner of property, whether an individual or a corporation, has a right to sell and dispose of it in good faith and for a valuable consideration.

"It is true that, ordinarily, a creditor has no right that will interfere with that of his debtor to sell and dispose of his property for a valuable consideration, unless he has taken the precaution to acquire some lien upon it, by mortgage or otherwise, as a security in his own behalf. As a rule, the right of an unsecured creditor is confined to the personal obligation and the undisposed of property of his debtor; still it is not strictly accurate to say that such creditor has no claim upon the property of his debtor, for in one sense, all the property owned by a debtor, unless exempt by statute from sale on execution, is subject to the claims of his creditors, and he cannot dispose of it unless for a valuable consideration, so as to defeat this right." Compton v. Railroad Co., 45 Ohio St. 592, 614, 16 N. E. 110, 18 N. E. 380.

The above extract from the opinion of Judge Minshall, is preliminary to the holding that under the act of April 10, 1856 (1 Swan & C. Rev. St. p. 327, now section 3384 et seq., of the Revised Statutes of Ohio), the effect of the Ohio act for the consolidation of railroads was to merge the old corporations into the new one, which took their place, succeeded to their property, and assumed their liabilities. Shields v. Ohio, 95 U. S. 319, 24 L. Ed. 357; Railway Co. v. Georgia, 98 U. S. 359, 25 L. Ed. 185; Wabash, etc., Ry. Co. v. Ham, 114 U. S. 587, 595, 5 Sup. Ct. 1081, 29 L. Ed. 235; Compton v. Railway Co., 45 Ohio St. 592, 613, 16 N. E. 110, 18 N. E. 380.

The interpretation thus placed upon these Ohio statutes was the result of the express language used. The original language, preserved in section 3384, provided that upon the consolidation:

"All rights of creditors, and all liens upon the property of either of said corporations (meaning the constituent companies), shall be preserved unimpaired, and the respective corporations may be deemed to be in existence to preserve the same; and all debts, liabilities and duties of either of said companies, shall thenceforth attach to said new corporation and be enforced against it to the same extent as if said debts, liabilities and duties had been contracted by it." Compton v. Railway Co., 45 Ohio St. 613, 16 N. E. 110, 18 N. E. 380; Rev. St. Ohio 1892, § 3384.

This express provision was held not to be applicable in the case of Railroad Co. v. Hinsdale, 45 Ohio St. 556, 15 N. E. 665, and for lack of it neither section 3300 nor section 3409 of the Revised Statutes of 1892 was deemed to confer authority to sell and transfer the stock subscriptions of a selling company to a purchasing one.

Again, section 3396, which relates to the reorganization of railroad companies, after defining the powers of the new company, and providing that all the franchises and property of the reorganized company shall be held and disposed of for the use and benefit of the creditors and stockholders of such company, contains the following language:

"And shall be in no wise chargeable in respect to any debt, liability or claim of any creditor or stockholder which subsisted prior to the sale and reorganization herein provided for."

Again, section 3426, which relates to the purchase of railroads at judicial sale, after providing for the incorporation of the purchasers and the transfer to them of the railroad and property purchased at the sale, contains the following language:

"And in the operation and maintenance of such railroad, the said corporation shall be entitled to all the rights, and subject to all the privileges and restrictions imposed upon railroad companies by the general laws of this state."

This language, it seems, is a substantial equivalent for that contained in section 3300; the "duties, obligations and restrictions of said company" being those "imposed upon railroad companies by the general laws of this state."

The cases of New Bedford R. R. Co. v. Old Colony R. R. Co., 120 Mass. 397, Berry v. K. C. Ft. S. & M. R. R. Co., 52 Kan. 759, 34 Pac. 805, 39 Am. St. Rep. 371, Montgomery & West Point R. R. Co. v. Boring, 51 Ga. 582, and Warren v. Mobile & Montgomery R. R. Co., 49 Ala. 582, all turn upon statutes whose language differs materially from that of the Ohio law.

In the Massachusetts case, by a special act one railroad was authorized to "purchase the rights, franchises and property" of another, and the latter, upon such purchase, was given power to convey "its franchises and property, and all the rights, easements, privileges and powers" granted to it, to the purchasing company, which upon such conveyance, was "to have, and enjoy all the rights, powers, privileges, easements, franchises and property," of the selling company, "and be subject to all the duties, liabilities, obligations and restrictions to which said last-named corporation may be subject." The Supreme Court of Massachusetts held that this language was broad enough to place the purchasing in all respects in the position of the selling corporation, upon the making of the conveyance. "It is equivalent to an amalgamation of the two; all the franchises, privileges, and powers are transferred without reservation; not merely the franchise to own and manage a railroad, but the franchise of being a body politic, with rights of succession, of acquiring, holding, and conveying property, and of suing and being sued by its corporate name. It puts out of the reach of creditors all property liable to attachment to satisfy claims, either in contract or tort. It practically terminates the corporate existence of the selling corporation," etc.  120 Mass. 400.

This is not true of section 3300 of the Ohio law. It does not provide for the sale of a railroad company, with all its franchises and property, but for the lease or sale of the whole or any part of a railroad constructed or in course of construction. The only franchises vested in the purchasing company are "the rights and powers in re-

spect to the location, construction, completion and operation of such railroad." It is perfectly obvious that the lease or sale of a part of a railroad under this provision would not necessarily terminate the existence of the selling company. It might, or it might not. The reasoning of the Massachusetts case does not apply here.

The statutes on which the other cases turn present even more marked differences.

In conclusion, we may observe that the stone crushing contract between Rice and the Cincinnati, Portsmouth & Virginia Railroad Company terminated before the purchase of the railroad of the latter company by the Norfolk & Western Railway Company. The amended petition claims damages for its breach. This is not a claim that the contract is or was binding originally upon the purchasing company. The claim is limited to the liability on the part of the latter for the damages caused by the selling company through a breach of its own contract with Rice. But it is to be observed that there is no averment and no claim that the purchasing company agreed to assume any such liability on the part of the selling company. Nor is there any attempt to charge the purchasing company with fraud in the disposition of the assets it obtained through the purchase. That remedy, the pursuit of the assets of the selling company, would only naturally follow an attempt to collect the claim against the selling company itself.

The judgment is affirmed.

NOTE.—The following is the opinion of Cochran, District Judge, on demurrer to amended petition:

COCHRAN, District Judge. This cause is submitted on demurrer to the amended petition. The liability of the defendant for the claims set forth in said pleading against the Cincinnati, Portsmouth & Virginia Railroad Company is based upon section 3300 of the Revised Statutes of Ohio and upon the meaning to be given to the word "obligations" contained therein. There is no such liability, unless said word is construed to embrace contract obligations. I do not think it can be so construed. It has reference solely to obligations imposed by law other than through contracts. Its meaning is affected to a certain extent by its companion words "duties" and "restrictions." It is not urged that they have reference to duties or restrictions arising out of contract. The statute not only renders the purchasing company subject to certain things, it also passes certain things to it, "the rights and powers in respect to the location, construction, completion and operation of such railroad and of branches thereto of the company from which it purchased said railroad, including the power to acquire and appropriate property therefor." The rights and powers which the statute thus passes are not rights and powers arising out of contracts, but such as are conferred by law otherwise than through contracts. As to whether the purchasing company is to be subject to other things, or other things are to pass to it upon the transfer, that is left to be determined by the contract between the two companies. The section provides that the transfer is to be "upon such terms as may be agreed upon between the companies."

This view of this statute is confirmed by a consideration of other statutes. Section 3426b relating to the purchase of railroads at judicial sale and the incorporation of the purchasers, provides that, "in the operation and maintenance of such railroad, the said corporation shall be entitled to all the rights and be subject to all the obligations and restrictions imposed upon the railroad companies by the general laws of this state."

Here it is plain that it is not rights and obligations arising out of contracts that is had in view, but such as are imposed by the general laws of the state. The absence here of the explanatory clause "imposed upon railroad companies

by the general laws of this state" does not differentiate that statute from this.

Again, section 3384, relating to consolidation of railroad companies, provides that "all debts, liabilities and duties of either of said companies shall thenceforth attach to the new company and be enforced against it to the extent as if such debts, liabilities and duties had been contracted by it"; and section 3396, relating to the reorganization of railroad companies, after defining the powers of the new company, provides that it "shall be in no wise chargeable in respect to any debt, liability or claim of any creditor or stockholder which subsisted prior to the sale and reorganization herein provided for."

These statutes show that when the Legislature had in view contract obligations it used apt words to describe them so as to leave no doubt as to its having them in mind.

The case of New Bedford Ry. Co. v. Old Colony Ry., 120 Mass. 397, can have no application here, because the statute there is different and was without other statutes having a bearing on its construction.

I do not mean to be understood as holding that, in case of a purchase by one railroad company of the property of another railroad company, under section 3300, a contract obligation of the seller may not pass to or against the purchaser in the absence of a provision in the contract between the two companies. It may pass if it possesses the characteristics of a covenant which runs with the land. But the contract obligations sought to be enforced herein against defendant are not of that character, nor is it claimed that they are.

There is room to hold that the amended petition is bad, even if the word "obligations" in section 3300 be construed to exclude contract obligations. The sale and purchase which it authorizes is conditional, to wit, "if the lines of road of such companies are continuous or connecting and not competing." It is nowhere alleged in plaintiff's pleadings that such condition existed in this case.

The demurrer is sustained.