ROBERTS *v.* BOLLES.

1. By the statutes of Illinois, municipal bonds payable to bearer are transferable by delivery, and the holder thereof can sue thereon in his own name.
2. The statute of that State of March 6, 1867, provides that the supervisor of a town, if a majority of the legal voters thereof voting at an election to be held for the purpose so authorized, shall subscribe for stock of a railroad company in the name of the town, and issue its bonds in payment therefor, and the fifth section declares that "no mistake in the giving of notice, or in the canvass or return of votes, or in the issuing of the bonds, shall in any way invalidate the bonds so issued, *provided* that there is a majority of the votes at such election in favor of such subscription." An application in due form for an election was signed by only twelve legal voters and tax-payers instead of twenty, and ten days' notice of the election instead of twenty given. The election was held at the specified time, and a majority

of the electors of the town voting thereat favored the subscription. It was accordingly made. A subsequent act of the legislature legalized the subscription, and the bonds were issued. *Held,* that, independently of that act, the bonds are not, in the hands of a *bona fide* purchaser, rendered invalid by reason of the departure from the statutory provisions touching the application for, and the notice of, the election.

3. *Williams* v. *Town of Roberts* (88 Ill. 1), decided three years after the judgment now under review was rendered, is not accepted by this court as conclusive against the validity of the bonds; for the Supreme Court of Illinois, while holding the election to be void, does not refer to said sect. 5, nor to the precise question upon which their validity is sustained here.

4. That decision would be an authority in point if it declared that said sect. 5 is in conflict with the Constitution of the State, or that the defects in the application and notice are not mere mistakes, within the meaning of the said statute of March 6, 1867. *Sed quœre,* would it be conclusive here.

5. *Brooklyn* v. *Insurance Company* (99 U. S. 362) cited and approved.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

This was an action brought by Bolles & Co. against the town of Roberts on certain bonds and coupons issued in its name by the supervisor of the town, in payment of its subscription to the capital stock of the Hamilton, Lacon, and Eastern Railroad Company. A judgment was rendered against the town, and the case was removed here on error. The facts are fully stated in the opinion of the court.

*Mr. A. J. Bell* for the plaintiff in error.

*Mr. George O. Ide, contra.*

MR. JUSTICE HARLAN delivered the opinion of the court.

This case involves the validity of certain township bonds, bearing date April 7, 1871, issued in the name of the town of Roberts, in the county of Marshall, Ill., and made payable to the Hamilton, Lacon, and Eastern Railroad Company, *or bearer,* on the 7th of April, 1874, with interest from date, payable annually, on the presentation and surrender of the interest coupons as they matured.

Each bond, signed by the supervisor of the town, attested by its clerk, and certified upon its face to have been duly recorded in the township registry of bonds, as directed by law, recites that it "is one of a series, amounting in the aggregate to $30,000, and consisting of thirty bonds, numbered from 1 to

30, inclusive, each of which is for $1,000, and all of which are of even date herewith, and are issued in accordance with the laws of the State of Illinois, in payment of a subscription made by said town of Roberts for three hundred shares of the capital stock of the Hamilton, Lacon, and Eastern Railroad Company, which said subscription was made by said town by virtue of a vote of a majority of the voters of said town in favor thereof, at a special election had for such purpose in said town on the twenty-fifth day of March, 1869, in pursuance of the provisions of the laws of the State of Illinois, and of the several acts of the General Assembly of the State of Illinois incorporating said company."

It is found as a fact in the case that, in January, 1872, defendants in error purchased, in good faith, the bonds in the market, without notice of any defence thereto, and paying therefor at the rate of ninty-three and a half cents on the dollar.

The first plea alleges that the payee named in the bonds, the railroad company, had never indorsed them, or any of them, in writing, and that by the law of Illinois in force when they were made, as well as when they were sold by the company, without such indorsement, they were not transferable so as to vest the title thereto, and the right to sue thereon in the name of the holder.

A demurrer to that plea was sustained, and, as we think, properly so. It is true that the Supreme Court of Illinois, in *Hilborne* v. *Actus* (4 Ill. 344), held that under a statute of that State, then in force, notes payable to a person or bearer could not be transferred, or assigned by delivery only, so as to authorize the holder by delivery to sue in his own name. "There is one way," the court said, "by which he can do so, and that is by virtue of the assignment indorsed on the note itself. The indorsement gives the right to sue in the name of the assignee." That construction of the Illinois statute was followed in *Roosa* v. *Crist*, 17 id. 450. But *New Hope Delaware Bridge Co.* v. *Perry* (11 id. 467) decides that bank-notes payable to bearer, or to a particular person or bearer, are not embraced by the provisions of the statute, or by the reasons which caused its passage; and that the holder, by delivery merely, can maintain an action thereon, unless it appears that he obtained them

*mala fide.* The statute, it was said, applies " only to instruments that were not negotiable by the common law or the custom of merchants."

In *Johnson* v. *County of Stark* (24 id. 75), the court put municipal bonds and coupons on the footing, in this respect, of bank-bills, and thus brought that class of commercial securities within the rule announced in *New Hope Delaware Bridge Co.* v. *Perry.* Its language was : " It seems to be the well-settled doctrine that State, county, city, and other bonds and public securities of this character are negotiable by delivery only, without indorsement, in the same manner as bank-bills, especially when they are payable to bearer." Subsequently, in *Supervisors of Mercer County* v. *Hubbard* (45 id. 139), which was an action on coupons attached to bonds issued by a county in payment of a railroad subscription, the court said : " More recent decisions place these coupons in the condition of bank-bills payable to bearer, and no one will deny such bills can be given in evidence in a suit by the bearer against the bank issuing them, under the common counts. We see no difference between coupons payable to bearer for a sum certain, and a bank-bill. They alike pass by delivery only." Finally, in *Town of Eagle* v. *Kohn* (84 id. 292), it was said : " It is the well-settled doctrine that bonds of this character are to be treated as commercial paper ; and this court has held coupons attached to them to be negotiable by delivery only, without indorsement."

It is thus seen that by repeated adjudications of that court, prior to the statute of 1874, municipal bonds payable to bearer were excepted from the rule announced in *Hilborne* v. *Actus* and *Roosa* v. *Crist.*

But all doubt upon the subject is removed by the eighth section of the act approved March 18, 1874, revising the laws of Illinois in relation to promissory notes, bonds, due-bills, and other instruments of writing, which was in force when this action was commenced. It provides " that any note, bond, bill, or other instrument in writing, made payable to bearer, may be transferred by delivery thereof, and an action may be maintained thereon in the name of the holder thereof." Rev. Stat. Ill. 719, sect. 8.

This act, though not in force when defendants in error

acquired the bonds in suit, applies, we think, to actions commenced after it took effect.

We are satisfied that this plea, tested alone by the law of Illinois, and without reference to the decisions of this court upon the subject of commercial securities, is insufficient.

The third plea, to which a demurrer was also sustained, proceeds upon the ground that the election of March 25, 1869, was called without competent authority, and conferred no power upon the supervisor and town clerk, or either of them, to subscribe to the stock or issue the bonds in question, and that the latter were, consequently, void.

Of the facts set out in the plea it is alleged that the defendants in error had " constructive notice," prior to their purchase of the bonds; to wit, on the day they bear date.

The questions of law presented under this plea arise out of certain facts which it is necessary to state somewhat in detail.

By an act of the legislature of Illinois, approved March 5, 1869, it is provided that any incorporated town or township of any county through or near which the Hamilton, Lacon, and Eastern Railroad Company may be located, or is about to be located, might, by a vote of the people thereof, subscribe to the corporate stock of the company any sum not to exceed $100,000 each, — such vote to be ascertained by an election held in the manner prescribed by and in conformity with the provisions of an act, approved March 6, 1867, authorizing certain designated counties, and townships, cities, incorporated towns, and corporations in said counties, to subscribe to the capital stock of any railroad then or which might thereafter be incorporated in the State of Illinois. The act of March 5, 1869, made it the duty of the clerk of each township, subscribing stock under its authority, to keep, in duplicate, a complete register of the bonds issued, showing their numbers, amount, date, and rate of interest, and deliver one copy of the same to the county clerk of his county.

Under the act of March 6, 1867, to which reference is made by the act of March 5, 1869, elections, to take the sense of the people upon subscriptions to the capital stock of a railroad company, could be called and held, upon the application of

twenty legal voters and tax-payers of the county, township, city, or incorporated town in whose behalf it was proposed to make the subscription, such application specifying the amount and the conditions of the proposed subscription. The notice of such election was required to be posted, in the case of a township, by the clerk thereof, in three of the most public places of such township. If a majority of such voters voting at said township election favored the subscription, then it was made the duty of the supervisors thereof to make the subscription; and when the subscription was accepted or received, to cause the bonds to be issued in compliance with the popular vote. Pri. Laws Ill. 1867, vol. i. p. 866.

The fifth section of the act of March 6, 1867, declares that "no mistake in the giving of the notice, or in the canvass or return of votes, or in the issuing of the bonds, shall in any way invalidate the said bonds so issued : *Provided*, that there is a majority of the voters at such election in favor of such subscription."

A few weeks after the election of March 25, 1869, to wit, on 17th April, 1869, the legislature of Illinois passed an act which, in its second section, declares that subscriptions of stock made by certain townships, including that made by the town of Roberts of $30,000 to the capital stock of the Hamilton, Lacon, and Eastern Railroad Company (quoting from the act), "be each legalized, and are hereby made valid and binding, according to the terms thereof; and the several supervisors of said townships shall issue, in due form, the bonds of their respective townships for the amount of stock subscribed for, according to the terms and conditions of said subscription, and shall deliver said bonds to said railroad company." Pri. Laws Ill. 1869, vol. iii. p. 302.

With these facts before us, we come to the examination of several propositions which have been pressed with much force upon our attention.

It is contended that the election mentioned in the bonds declared on was a nullity, because called upon an application signed by only twelve, instead of twenty, legal voters and tax-payers, and because only ten days' notice thereof was given, when the law required twenty; that the law is imperative in

these respects, and that the failure to comply with its require-
ments rendered the bonds void, even in the hands of innocent
holders for value; that such was the settled law of Illinois, as
declared by the Supreme Court of that State prior both to the
election of March 25, 1869, and to the issuing of the bonds;
and, finally, that such prior judicial declarations are to be re-
garded as part of the local statutes, binding upon this court,
according to its own decisions.

Undoubtedly there are several decisions by the Supreme Court
of Illinois of the character indicated by counsel; but unless we
are greatly in fault in our examination, no one of them relates
to a municipal subscription, or to an issue of bonds, under a
statute containing a provision similar to sect. 5 of the act
of March 6, 1867, under which the election in question was
held. That act rests the validity of bonds issued under its
authority upon the essential fact that the majority of voters
at the election voted, as in this case, in favor of the subscrip-
tion. In that event, it expressly declares that the bonds shall
not *in any way* become invalidated by reason of *mistake in
the giving of the notice, or in the canvass or return of votes,
or the issuing of the bonds*. These words are without effect
if the municipality issuing the bonds can avoid their payment
because its agents or constituted authorities committed mistakes
such as are specified in the statute. If the town clerk gave a
notice of ten instead of twenty days, based upon an application
of twelve instead of twenty legal voters and tax-payers, was
not this a mistake " in the giving of the notice " and " in the
issuing of the bonds "? The purchaser of the bonds, if charge-
able with notice of these facts, was, in terms, assured by the
statute that no such mistakes as those facts indicated would
invalidate the bonds, if the majority of the voters at the election
had approved the subscription. He had the right to rely upon
these legislative assurances, unless the fifth section of the act
of March 6, 1867, was in violation of the Constitution of the
State. We do not, however, feel justified in declaring that
provision of the act to be in conflict with that instrument. We
are referred to no decision of the State court which so decides.
On the contrary, that court, in *Burr* v. *City of Carbondale*
(76 Ill. 455), which was a case of municipal bonds, said:

" These bonds having been issued in the exercise of a power constitutionally conferred, must be binding on the municipality, although some irregularities in the form of notice of the election, want of the precise words on the ballots, and others of like character, may have occurred." p. 469.

It is true that, according to the settled construction of the Constitution of Illinois in force in 1869, the legislature could not require or compel the corporate authorities of a county, city, or town, against or without its consent, to subscribe to the stock of a railroad company. But it could *authorize* such corporate authorities to make subscriptions with or without referring the question to the people immediately interested.

In *President and Trustees of the Town of Keithsburg* v. *Frick* (34 Ill. 405), the Supreme Court of Illinois, speaking by the late Chief Justice Breese, held that it was by no means a necessary element in municipal subscriptions to the stock of railroad corporations that there should be a vote of the inhabitants of the town or city authorizing them ; " that it was competent for the legislature to bestow the power directly on the corporation without any other intermediary." The authority of that case, upon some points therein determined, has perhaps been shaken by later decisions in the same court. But in *Marshall* v. *Silliman* (61 id. 218), the court, while holding that the legislature could not clothe the supervisor and town clerk, without the consent of the people, with discretionary power of taxation or of creating a debt, — they not being the corporate authorities of the township in the sense of the Constitution, — yet approved that case so far as it ruled that those who were the corporate authorities of a town, within the meaning of a State Constitution, might be empowered by the legislature to subscribe to the stock of a railroad corporation, and issue bonds therefor, without taking a vote of the people. *Q. M. & P. R. R. Co.* v. *Morris*, 84 id. 410.

Certainly the legislature could prescribe the mode of ascertaining the sense of the voters, who alone, it is claimed, were the corporate authorities of the town, within the meaning of the State Constitution. And as it might, in the act of March 6, 1867, have allowed the election to be called upon the application of a less number of voters and tax-payers than twenty,

and to be held after a notice of ten days, rather than twenty, we do not see any ground to question its right, consistently with the State Constitution, to declare, in advance, that if the majority of voters at the election favor the subscription, the bonds issued in payment thereof should not be invalidated by mistakes of the kind specified in the fifth section of that act. The mistakes here complained of were not such as necessarily affected the substance or essence of the election, and consequently it cannot be said that the subscription was made or the bonds issued without the consent of the corporate authorities or the legal voters of the township. The application for the special election and the notice therefor were not so radically defective as to justify us in saying, as matter of law, that a debt for a railroad subscription was thrust upon the legal voters and tax-payers of the township without their having a reasonable opportunity to vote upon the question of subscription. It is not a case where bonds have been issued by the supervisor and town clerk, without any previous election whatever to authorize them so to do. It is a case of bonds issued in pursuance of a popular election, defectively called and held, and as to which the legislature declared that the bonds should not be invalidated by mistakes in giving the notice and in issuing them, if there was " a majority of votes at such election in favor of such subscription."

In this respect the case in hand is different from *Township of Elmwood* v. *Marcy*, 92 U. S. 289. In the latter case, when the notice for the election was given, there was no provision in the charter of the town or in any statute of the State which authorized the subscription. The power of the town to subscribe had previously been exhausted; and the notice was not under or with special reference to the subsequent act allowing an additional subscription. Nothing here determined conflicts with that decision.

Independently, therefore, of the curative act of April 17, 1869, we are of opinion that the bonds sued on are not invalid by reason of the departure from the provisions of the act of March 6, 1867, in the matter of the application for and notice of the election of March 25, 1869.

But a further contention of the plaintiff in error is that the

Supreme Court of Illinois, in *Williams* v. *Town of Roberts* (88 Ill. 1), decided in June, 1878, nearly four years after the commencement of this action, and three years after the entry of the judgment in this case, held not only that the curative act of April 17, 1869, was in violation of the Constitution of the State, but that the election of March 25, 1869, was a nullity, conferring no power upon the supervisor of the town to make the subscription and issue the bonds.

In reference to the alleged conflict of the last-named act with the Constitution of Illinois, we give no opinion. The views we have expressed as to the validity of the bonds, under the act of March 6, 1867, particularly its fifth section, render it unnecessary to consider or determine the constitutional validity of the curative act of 1869. It is, however, claimed that we are obliged to accept the decision in *Williams* v. *Town of Roberts*, as conclusive against the validity of these particular bonds. We cannot give our assent to this proposition, for the reason, if there were no other, that that decision does not touch the precise point upon which we sustain their validity, despite the defective application and notice for the election of March 25, 1869. No reference is made, in that case, to the fifth section of the act of March 6, 1867, upon which we have commented. The Supreme Court of Illinois, in the case alluded to, undoubtedly held that the defects in the application and notice rendered that election a nullity, and that, because of such defects, the subscription was made and the bonds issued without authority of law. But we are not informed as to the effect which, in the opinion of that court, is to be given to the fifth section of the act of March 6, 1867. If the court had gone further, and decided that section to be unconstitutional ; or that the defective application and notice for the election were not mere mistakes within the meaning of that section ; or that the bonds declared on were null and void, notwithstanding the legislative declaration that they should not be invalidated because of any mistake in giving the notice, in issuing the bonds, or in the canvass or return of votes, — then its decision would have been an authority in point, covering the precise question before us. If we are mistaken in this, it does not follow that we should accept that decision as conclusive of this case. That would depend

upon our approval or disapproval of the decision upon its merits.   In *Pease* v. *Peek* (18 How. 599), we said that this court would not feel bound, "in any case in which a point is first raised in the courts of the United States, and has been decided in a circuit court, to reverse that decision contrary to our own convictions, in order to conform to a State decision made in the mean time.   Such decisions have not the character of established precedent declarative of the settled law of the State."   *Morgan* v. *Curtenius*, 20 How. 1.

For these reasons we are of opinion that the demurrer to the third plea was properly sustained.

The facts set out in the fourth plea clearly do not constitute a defence to the action.   We could not hold otherwise without overturning the settled doctrines of this court in reference to municipal bonds issued in payment of subscriptions to the capital stock of railroad corporations.   Our remarks in *Brooklyn* v. *Insurance Company* (99 U. S. 362) are applicable to this case, and support the action of the court in sustaining a demurrer to the fourth plea.

Other considerations might be suggested in support of the judgment, but what we have said is sufficient to dispose of the case.

*Judgment affirmed.*