ADELBERT COLLEGE OF WESTERN RESERVE UNIVERSITY et al. .v. WABASH R. CO. et al.

PIERSON et al. v. SAME.

(Circuit Court of Appeals, Sixth Circuit.   July 13, 1909.)

Nos. 1,907 and 1,908.

1. COURTS (§ 366*)—FEDERAL COURTS—AUTHORITY OF DECISIONS OF STATE COURTS—CONSTRUCTION OF STATE STATUTES.

The rule that a settled construction of a state statute by the highest court of the state is binding upon and will be followed by the federal

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

courts implies that the state decision must have been one based alone upon the statute construed and which did not involve extraneous conditions.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 957; Dec. Dig. § 366.*]

2. COURTS (§ 366*)—FEDERAL COURTS—AUTHORITY. OF DECISIONS OF STATE COURTS—CONSTRUCTION OF STATE STATUTES.

The rule that federal courts will accept and follow a construction of a state statute by the highest court of the state is not obligatory, where such construction was made after rights involved had accrued, although they will lean toward an agreement with the state court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 957; Dec. Dig. § 366.*]

3. COURTS (§ 370*)—FEDERAL COURTS—AUTHORITY OF DECISIONS OF STATE COURTS—CONSTRUCTION OF STATE STATUTES.

A subordinate federal court is bound to follow a construction placed upon a state statute by the Supreme Court of the United States in a suit involving the identical question, notwithstanding a contrary decision by the Supreme Court of the state, rendered later and after the rights in suit affected by such decision had been acquired.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 953; Dec. Dig. § 370.*

Conclusiveness of judgment between federal and state courts, see note to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

The questions here involved arose under intervening petitions filed in the consolidated mortgage foreclosure suits, styled "Jessup & Knox v. Wabash, St. Louis & Pacific Railway and Others." The interveners are the same who prosecuted their claims in the state courts of Ohio to a decree in accordance with their insistence. Upon a writ of error from the Supreme Court of the United States, the decree was reversed for want of jurisdiction in the state court over the roads sought to be subjected; the property being within the exclusive jurisdiction of the court below. Wabash Railway Co. et al. v. Adelbert College et al., 208 U. S. 38, 28 Sup. Ct. 182, 52 L. Ed. 379, and Id., 208 U. S. 609, 28 Sup. Ct. 425, 52 L. Ed. 642. After the decision last cited these interventions were filed.

The Toledo & Wabash Railroad Company was a consolidated road, organized under the laws of Ohio and Indiana, and included the road of a former Ohio company and the connecting road of a former Indiana company. That consolidated company, in 1862, issued a series of coupon-bearing negotiable notes which aggregated $600,000. They were wholly unsecured and differed from the general unsecured indebtedness of that company only in the fact that under certain circumstances they were, at the option of the holder, convertible into stock. These obligations matured in 1883 and are wholly unpaid, together with interest since 1874. The appellants hold about one-half of the entire issue and now assert that a lien exists in favor of this series of notes against the original Ohio division of the Toledo & Wabash Railroad Company, which is superior to every incumbrance upon that division, by mortgage or otherwise, which is subsequent in date to August 1, 1865.

The lien asserted is claimed to have originated on that date in consequence of a consolidation which was then consummated with three Illinois railway companies, owning connecting lines, which, with the road of the Toledo & Wabash Company, formed a continuous line to the Mississippi river. The new company thus organized was known as the "Toledo, Wabash & Western Railway Company."

This consolidation was had under the laws of Ohio, Illinois, and Indiana. The Ohio statute then in force was the act of April 10, 1856, and is sub-

stantially that embraced in Bates' Ohio statutes, §§ 3379 to 3384, inclusive. The relevant section (3384) is in these words:

"Upon the election of the first board of directors of the company created by the agreement of consolidation, all and singular the rights, privileges and franchises of each of the companies to the agreement, and all the property, real, personal and mixed, and debts due on account of subscriptions of stock, or other things in action, shall be deemed to be transferred to and vested in such new company, without further act or deed; all property, rights of way, and other interests, shall be as effectually the property of the new company as they were of the companies parties to the agreement; the title to real estate, either by deed, gift, grant, or by appropriations under the laws of this state, shall not be deemed to revert or be impaired by reason of the consolidation; but all rights of creditors and all liens upon the property of either of such companies, shall be preserved unimpaired and the respective companies may be deemed to be in existence to preserve the same; and all debts, liabilities and duties of either of said companies, shall thenceforth attach to the new company, and be enforced against it to the same extent as if such debts, liabilities and duties had been contracted by it."

The agreement of consolidation, after reciting that the contracting parties had agreed to consolidate their roads, property, and capital stock into one company, set out that: "The Toledo & Wabash Railway Company enters into said consolidation on the following basis, viz.: That the capital should be $10,000,000. composed as follows:

First mortgage bonds .......................................$ 3,400,000
Second mortgage bonds .................................... 2,500,000
Convertible equipment bonds ............................. 600,000
Convertible preferred stock .............................. 1,000,000
Common stock .......................................... 2,500,000

$10,000,000"

It also provided that all the rights, franchises, property, debts, and choses in action of the respective companies should vest in the consolidated company.

The important feature of this agreement was in these words:

"It is further agreed that the bonds and other debts hereinabove specified, in the manner and to the extent specified and not otherwise provided for in this agreement, shall, as to the principal and interest thereon, as the same shall respectively fall due, be protected by the said consolidated company according to the true meaning or effect of the instruments or bonds by which such indebtedness of the several consolidating companies may be evidenced."

The convertible equipment bonds referred to in this agreement are the series of negotiable coupon-bearing notes, for which a lien is now asserted in this proceeding.

After this consolidation other consolidations, not necessary to here mention, occurred, and mortgages, securing large issues of bonds, were from time to time made by one or another of the successive consolidated corporations.

Finally, defaults occurring, foreclosure suits were filed in the Circuit Courts of Indiana, Illinois, and Ohio. On March 13, 1899, an identical decree of sale was made in the several Circuit Courts, under which the roads of the several constituent or consolidated companies were sold. The decree under which the Ohio division of the then last consolidated company, the Wabash, St. Louis & Pacific Railway Company, was sold, was made in a case styled "Jessup & Knox v. Wabash, St. Louis & Pacific Railway Company." Under that decree the consolidated roads were sold as a whole to a purchasing committee representing mortgage creditors. This purchasing committee organized the Wabash Railway Company, and turned the entire property over to it, and that company has ever since been in possession and is one of the appellees here.

The sale was free from the lien of the foreclosed mortgages, but was made subject to the debts and liabilities of the receivership and to all other claims which might be established against the property, or allowed in that cause, with the right reserved to the court to retake possession and resell it if any . claim adjudicated by the court should not be paid by the purchasers.

At the time of this decree there had been asserted in that case a claim by James Compton to a lien under a decree in his favor by the Supreme Court of Ohio, as a holder of a part of the series of convertible equipment bonds issued by the Toledo & Wabash Railway Company. The opinion of the Ohio court as to Compton's lien may be seen in 45 Ohio St. 592, 16 N. E. 110, 18 N. E. 380.

His rights, not having been determined at the date of the decree of sale, were reserved in terms which were· subsequently construed by the Supreme Court as imposing an obligation payable next after the two senior mortgages upon the Ohio division. The history, character, and place of this Compton judgment is set out in detail in the case of Compton v. Jessup, 167 U. S. 1, 17 Sup. Ct. 795, 42 L. Ed. 55, and reference is here made to that opinion. According to the mandate in that case, a decree was entered in the court below, requiring an accounting by the Wabash Railway Company of the net earnings of the Ohio division of its said railway for the purpose of ascertaining the· balance, if any, due to it under the mortgages upon that division superior to the lien under Compton's decree, and the case was pending under that accounting, when, on June 9, 1908, these appellants filed intervening petitions, wherein they asserted a lien identical with that of Compton and a right to share with him in the proceeds of the sale of the Ohio division after the lien of the two mortgages had been discharged. To these petitions the purchasers, the Wabash Railway Company and Ellen Compton, as executrix of James Compton, demurred. The demurrers were sustained, and the intervening petitions dismissed.

Lawrence Maxwell and Murray Seasongood, for appellants.

J. G. Milburn and Rush Taggart, for appellees.

Before LURTON and SEVERENS, Circuit Judges, and KNAPPEN, District Judge.

LURTON, Circuit Judge (after stating the facts as above). It must be conceded that Compton's claim to a lien upon the Ohio division of the Toledo & Wabash Railway, when asserted by him in the suit of Jessup & Knox v. Wabash, St. Louis & Pacific Railway Company, stood upon a very different footing from that of the appellants, who now assert a lien against the same division. That the appellants are holders of some of the same class of bonds as those upon which Compton's original claim rested is true; but Compton's claim of lien was adjudicated in his individual suit by the Supreme Court of Ohio. See Compton v. Railway Company, 45 Ohio St. 592, 16 N. E. 110,. 18 N. E. 380. That. court adjudged that he had a lien and accorded him a decree for the sale of that division, subject.only to the prior divisional mortgage thereon. That was his status when brought into the general foreclosure case conducted by the very mortgagees who had been defendants to his action in the Ohio court. When so brought into that court, he, by proper pleading asserted the adjudicated lien and the right to a sale accorded him by the Ohio court. His lien was denied by the other lienors proceeding in that case. Before the issue thus made was determined, the court ordered a sale of the entire line of railway, including the Ohio division against which Compton was endeavoring to enforce the Ohio decree. To a sale in advance of the determination

of the issues made as to the lien asserted by him, Compton objected, whereupon the sale was ordered upon the condition, that:

"If it should be adjudged by this court that the decree rendered by the Supreme Court of the state of Ohio, in the suit brought by said James Compton against the Wabash, St. Louis & Pacific Railway Company and others, referred to in the pleadings herein, and the lien thereby declared and adjudicated in his favor, continues in full force and effect, then the purchaser or purchasers at any sale or sales hereunder of that portion of the property sold, covered, and affected by said lien or the successors in the title of said purchaser or purchasers, shall pay to the said James Compton or his solicitors herein within 10 days after the entry of the decree herein in favor of said James Compton, the sum of $339,920.40, with interest from May 1, 1888, being the amount found due on the equipment bonds by him owned, by the Supreme Court of Ohio, in his said suit; * * * and in default of such payment this court shall resume possession of the property covered and affected by the said lien of the defendant, James Compton, and enforce such decree as it may render herein in his favor by a resale of such property or otherwise as this court may direct."

Shortly after the sale the Circuit Court adjudged Compton's lien to be a valid one, but accorded to him the single remedy of redemption of two Ohio divisional mortgages and the two Indiana divisional mortgages. Upon appeal to this court, the judges were not agreed as to the remedy and certified certain questions to the Supreme Court. See Compton v. Jessup, 68 Fed. 263, 15 C. C. A. 397. The response of that court is found in its opinion. Compton v. Jessup, 167 U. S. 1, 28, 34, 36, 17 Sup. Ct. 795, 42 L. Ed. 55.

As exhibiting the quite exceptional character of Compton's claim and rights, this court, as ground for according Compton a remedy by redemption rather than resale, pointed out that there were outstanding many other obligations similar to those which had been the basis for the Compton judgment, and that the purchasers ought not to be subject to other proceedings and other resales if such equipment bonds should be held liens identical to that of Compton. To this the Supreme Court said, at page 34 of 167 U. S., at page 807 of 17 Sup. Ct. (42 L. Ed. 55):

"The apprehensions expressed in their brief by the learned counsel of the appellees, that because of the absence of the other holders of the equipment bonds, the purchasers or their successor, the Wabash Railroad Company, may yet be subjected to their claims, are without foundation. It would seem that their claims were disposed of by the decree of this court in the case of Wabash, St. Louis & Pacific Railway v. Ham, 114 U. S. 587, 5 Sup. Ct. 1081, 29 L. Ed. 235, where it was held that the property sold under the decree of foreclosure is not subject to any lien in favor of the holders of the equipment bonds. We think it quite plain that Compton is the only party having an interest in and a right to enforce the decree of the Ohio Supreme Court. The provision contained therein assessing the amount of his claim as to the amount of the bonds held by him shows that the decree was intended to operate solely for his benefit, and the direction that the proceeds of sale should be brought into court, to abide its further order on the footing of the decree, is the order usually made when a sale is made by an officer appointed by the court. Such a sale might result in a sum in excess of Compton's claim, and, in such event, there would be room for a further order of the court."

Again, that court said:

"Compton's claim, in its present status, consists of the decree of the Ohio state court in his individual favor, fixing the amount of his debt, and decreeing a sale of the Ohio property, and of the decree of sale of the Circuit Court

of the United States affirming the decree of the Ohio court as to the validity and amount of the claim, and providing that if it should not be paid by the purchasers, Compton should have a right to a sale of the Ohio road or to some equivalent remedy."

With respect to the remedy, that court answered:

"(1) That the decree of sale of March 23, 1889, confers upon Compton, in event that his claim shall not be paid by the purchaser, the right to a decree of resale of the property situated in Ohio and covered and affected by his lien.

"(2) That, in event of such sale, and in applying the proceeds thereof, Compton will be entitled to an account of the net earnings of the Ohio division over and above all operating expenses, taxes paid, and cash paid, if any, in redemption of receiver's certificates and other expenses properly chargeable against the Ohio division, which net earnings should be deducted from the amount due on the two prior mortgages on said division."

When the mandate of the Supreme Court came down, a decree for an accounting was entered as required, and this accounting had been going on for some eight years when the intervention of these appellants was filed, asserting a lien of like character to that accorded Compton, and a right to participate with him in the proceeds of any resale of the Ohio division.

In view of the exceptional character of Compton's rights under the decrees adjudicating them, and especially under the decree upon which the pending account was being taken, it has been insisted with much force that appellants have no right to intervene under decrees intended to operate solely for his benefit.

Again, it has been urged, with quite as much earnestness, that the extraordinary delay of these complainants in coming into the foreclosure case is laches of such serious character as to require their exclusion.

These questions we shall, for the present, pass by without decision, for, if the appellants have no lien to assert, these questions will be unimportant.

We come then to the question of the lien of the equipment bonds held by the appellants. Confessedly no kind of lien or security existed when these obligations were issued by the Toledo & Wabash Railway Company. The claim is that in 1865 a lien to secure them arose, under the Ohio statute regulating the consolidation of railway companies, in consequence of the consolidation at that time of the debtor railroad company with three Illinois roads, and the organization of a new corporation known as the "Toledo, Wabash & Western Railway Company."

The relevant section of this consolidating act, being section 3384, Rev. St. Ohio, has been heretofore set out.

From the consolidation, by direct effect of the section referred to there results: First, that all of the property of each of the constituent companies is vested, without deed, in the new company; second, "the rights of creditors and all liens are preserved unimpaired, and the debts and liabilities of each of the old companies thenceforth attach to the new corporation and are enforceable, to the same extent as if said debts, liabilities and duties had been contracted by it."

It is to be noticed, however, that the statute does not declare that the debts of the consolidating companies thus attaching to the new organi-

zation constitute a lien or charge upon the property of the new company.

The effect of this statute and of the agreements between the consolidating companies for the purpose of consummating a consolidation has been twice before courts of the highest importance. The first was that of the Wabash, St. Louis & Pacific Railway Company v. Ham, 114 U. S. 587, 5 Sup. Ct. 1081, 29 L. Ed. 235, in which certain of the same series of equipment bonds here involved were held not to constitute a lien or charge either under the Ohio statute nor under the consolidation agreement. Three years thereafter the same question came before the Supreme Court of Ohio in Compton v. Wabash, St. Louis & Pacific Railway Co., 45 Ohio St. 592, 16 N. E. 110, 18 N. E. 380, when that court refused to accept the conclusion of the Ham Case and held that a lien existed.

The contention now made is that the decision of the Ohio court is conclusive upon this court, as a construction and interpretation of the Ohio statute.

That the courts of the United States will accept and apply the settled construction by the highest court of the state of a state Constitution or statute is an elemental general rule. A settled and received interpretation of a state statute by its own courts becomes as much a part of the law of the state as if written into the statute itself. Green v. Neal, 6 Pet. 291, 8 L. Ed. 402; Fairfield v. Gallatin, 100 U. S. 47, 25 L. Ed. 544; Bucher v. Railroad Co., 125 U. S. 555, 8 Sup. Ct. 974, 31 L. Ed. 795; Forsyth v. Hammond, 166 U. S. 506, 518, 17 Sup. Ct. 665, 41 L. Ed. 1095; Byrne v. K. C. R. Co., 61 Fed. 605, 614, 9 C. C. A. 666, 24 L. R. A. 693; Great Southern Fire Proof Hotel Co. v. Jones, 116 Fed. 793, 54 C. C. A. 165, affirmed by Supreme Court, 193 U. S. 532, 24 Sup. Ct. 576, 48 L. Ed. 778.

This rule obviously implies that the state decision which is to foreclose the independent judgment of a court of the United States must have been one based alone upon the statute construed, for, if extraneous conditions were involved, the judicial mind was not applied to the precise question, and the decision, though persuasive, has not the obligatory effect of a clear case of statutory construction. Town of Venice v. Murdock, 92 U. S. 494, 23 L. Ed. 583; Tulare Irrigation District v. Shepard, 185 U. S. 1, 11, 22 Sup. Ct. 531, 46 L. Ed. 773. See, also, Roberts v. Bolles, 101 U. S. 119, 128, 25 L. Ed. 880; Byrne v. K. C. Ry. Co., 61 Fed. 605, 614, 9 C. C. A. 666, 24 L. R. A. 693; Three States' Lumber Co. v. Blanks, 133 Fed. 479, 482, 66 C. C. A. 353, 69 L. R. A. 283.

Aside from all consideration of the obligation of this court to follow the prior opinion of the Supreme Court upon the same statute in the Ham Case, we do not think the decision of the Ohio Court in the Compton Case is such a clear case of statutory construction as to make it our duty to follow it without regard to any opinion we may entertain as to the proper construction of the Ohio statute.

The fair inference from the argument of Judge Minshall is that when a statute provides for the consolidation of old corporations into a single new one, and imposes upon the new organization the debt of the old organizations, that a universal lien upon all of the property of

the consolidated company is created by operation of general principles of jurisprudence, to secure all of the debts of the old companies. If this be a correct construction of so much of the opinion as deals with such a lien, independently of the consolidating agreement that the new company shall protect the debts of the merged corporations, it cannot be regarded as a clear decision that the lien was a purely statutory one.

But under the well-settled rule of the Ohio Supreme Court, the syllabus of the case alone constitutes the law of the case, as agreed to by the majority of the members of the court. Rule 6, Ohio Supreme Court, preface 5 Ohio St. vii, and x, preface 73 Ohio St., 67 N. E. vii. If the syllabus is ambiguous, it may be read in the light of the facts stated in the report of the case Witte v. Lockwood, 39 Ohio St. 141, 145.

Turning, then, from an ambiguous opinion to the syllabus of that case, we find that following a statement of the facts, including the stipulations of the agreement forming the basis of consolidation, the syllabus reads as follows:

"That under the statute of this state in force at the time the Toledo, Wabash & Western Railway Company was formed by consolidation (1 Swan & C. St. 327), and the stipulation in the agreement that these equipment bonds should be protected by the new company, the holders of these bonds acquired the right to require the property of the company that issued them to be applied to their payment; and, the consolidation and the agreement being matter of public record, the right is available against all persons deriving title from the consolidated company."

This official statement of this point decided, upon which the court agreed, makes it clear that the lien declared was the combined result of the consolidation under the statute and of the stipulations which were the basis of the agreement for the consolidation.

Whether Judge Minshall was of opinion that the statute created the lien independently of the stipulations of the consolidating companies is of little importance, for the court concurred only in a decision which declared a lien in consequence of the statute and of the terms of the stipulation. It is therefore illogical to say that the Ohio court has construed this statute as creating a lien purely in consequence of the terms of the statute.

Certain observations of Judges Taft and Lurton, in the separate opinions of those judges found in Compton v. Jessup, 68 Fed. 263, 15 C. C. A. 397, referring to the lien of Compton as a lien arising under the Ohio statute, have been cited. No question was then before the court, which called for the consideration of the opinion of the Ohio court as a case of pure statutory construction. The references were in connection with the argument that Compton should redeem, rather than have a resale, in consequence of the fact that there were outstanding other bonds of the same series of equipment obligations as those upon which Compton's judgment was based, and that, as Compton had not brought in such other holders, the purchaser might be subjected to other demands for a resale of the Ohio division to enforce their liens. This fear, the Supreme Court said, was without foundation, in view of the fact that Compton was proceeding not upon his bonds, but upon the

decree of the Supreme Court of Ohio. according him a lien, and because any such claim of liens by such other holders were disposed of by the Ham Case. That the court in that part of its opinion referred to did not refer to the "decree" in the Ham Case, but to the opinion, is evident from the context, for they proceed by saying:

"Where it was held that the property sold under the decree of foreclosure is not subject to any lien in favor of the holders of the equipment bonds."

Reference has also been made to like characterization of the Ohio decision in Columbus R. Co. Appeals, 109 Fed. 177, 195, 48 C. C. A. 275, and in Rice v. N. & W. R. Co., 153 Fed. 497, 82 C. C. A. 447. Neither case called for any determination of the question as to whether the decision in Compton v. Ry. Co., 45 Ohio St. 592, 16 N. E. 110, 18 N. E. 380, was based wholly upon the statute involved, or the statute in connection with the agreement and stipulations of the consolidating companies.

The observations of Chief Justice Marshall, in Cohen v. Virginia, 6 Wheat. 264, 298, 5 L. Ed. 257, concerning dicta, are relevant, where he said:

"It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided; but their possible bearing on all other cases is seldom completely investigated."

But the rule that a court of the United States will accept and follow a construction of a statute by the highest court of a state is not one of universal application. There are many notable and well-settled exceptions. One of these is that a court of the United States is not absolutely constrained to accept and follow a construction of a statute of the state by the courts of the state, if such construction was made after rights had accrued before such decisions were announced, though it will lean toward an agreement with the state court. Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359; Louisville Trust Co. v. Cincinnati, 76 Fed. 296, 301, 22 C. C. A. 334; Carroll County v. Smith, 111 U. S. 556, 562, 4 Sup. Ct. 539, 28 L. Ed. 517; Jones v. Great Southern Fire Proof Hotel Co., 86 Fed. 370, 30 C. C. A. 108; Id., 116 Fed. 793, 54 C. C. A. 165, affirmed by the Supreme Court, 193 U. S. 532, 24 Sup. Ct. 576, 48 L. Ed. 778; Julian v. Central Trust Company, 193 U. S. 93, 24 Sup. Ct. 399, 48 L. Ed. 629.

In Louisville Trust Company v. Cincinnati, cited above, this court thus stated this exception:

"A well-grounded exception exists where contracts and obligations have been entered upon before there has been any judicial construction of the statutes upon which the contract or obligation depends by the highest court of the state whose statute is involved. In such a case, if a court of the United States obtains jurisdiction of a question touching the validity, effect, or obligation of such a contract, it will, while 'leaning to an agreement with the state court,' exercise an independent judgment as to the validity and meaning of such contract, although the meaning and validity of state statutes may be

an element in the case, and will not be bound to follow opinions of the state court construing such statute, if such decisions were rendered after the rights. involved in the controversy originated."

The leading case upon the subject is that of Burgess v. Seligman, cited above. The action was one in which the rights in issue depended upon a statute of Missouri which had not been construed. Pending a writ of error to the Supreme Court, the Supreme Court of the state, in another suit dependent upon the same statute, construed the statute contrary to the opinion of the United States Circuit Court. It was urged in the United States Supreme Court that it was the duty of that court to follow this construction of the statute involved. Upon this subject the Court said:

"So, when contracts and transactions have been entered into, and rights have accrued thereon under a particular state of decisions, or when there has been no decision, of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued; but even in such cases, for the sake of harmony and to avoid confusion, the federal courts will lean toward an agreement of view with the state courts if the question seems to them balanced with doubt."

In Carroll County v. Smith, cited above, there was involved the interpretation of a clause in the Constitution of Mississippi, forbidding a county to lend its aid to a corporation, unless two-thirds of the qualified voters should assent thereto at an election. Carroll county had issued bonds in aid of a railroad company, which contained no recitals estopping the county in respect to the legality of the vote by which the bonds had been issued. In a suit between other parties upon some of the same bonds, in a court of Mississippi, it was held that the Constitution and laws of the state required the assent of two-thirds of the qualified voters of the county to authorize the issuance of the bonds in question, and that, as less than that number had voted for them, the election was invalid and the bonds void. Hawkins v. Carroll County, 50 Miss. 735. Subsequently another holder of bonds, a citizen of another state, brought an action in a Circuit Court of the United States upon other bonds of the same series. The decision of the Supreme Court of the state construing the Constitution and statute of the state was urged as a decision which it was the duty of the courts of the United States to follow. To this the Supreme Court, by Mr. Justice Matthews, said:

"The decision in Hawkins v. Carroll County, above referred to, is not a judgment of the Supreme Court of Mississippi, construing the Constitution and laws of the state, which, without regard to our own opinion upon the question involved, we feel bound to adopt and apply in the present case. It is a decision upon the very bonds here in suit, pronounced after the controversy arose, and between other parties. It was not a rule previously established, so as to have become recognized as settled law, and which, of course, all parties to transactions afterwards entered into would be presumed to know and to conform to. When therefore it is presented for application by the courts of the United States, in a litigation growing out of the same facts, of which they have jurisdiction by reason of the citizenship of parties, the plaintiff has a right, under the Constitution of the United States, to the independent judgment of those courts, to determine for themselves what is the law of the state, by which his rights are fixed and governed. It was to that very end that the Constitution granted to citizens of one state, suing in another,

the choice of resorting to a federal tribunal. Burgess v. Seligman, 107 U. S. 20, 33, 2 Sup. Ct. 10, 27 L. Ed. 359.

"We have, however, considered the reasoning of the Supreme Court of Mississippi, in its opinion in the case of Hawkins v. Carroll County, with the respect which is due to the highest judicial tribunal of a state speaking upon a topic as to which it is presumed to have peculiar fitness for correct decision, and while we are bound to admit the carefulness and fullness of its examination of the question, we are not able to adopt its conclusions. On the contrary, we are constrained to follow the decision in St. Joseph Township v. Rogers, 16 Wall. 644, 21 L. Ed. 328, and adhere to the views expressed by this court in County of Cass v. Johnston, 95 U. S. 360, 24 L. Ed. 416, in deciding the same question upon the construction of a provision of the Constitution of Missouri, which is identical with that of the Constitution of Mississippi under consideration. It was there declared and decided that: 'All qualified voters, who absent themselves from an election duly called, are presumed to assent to the expressed will of the majority of those voting, unless the law providing for the election otherwise declares. Any other rule would be productive of the greatest inconvenience, and ought not to be adopted, unless the legislative will to that effect is clearly expressed.' 95 U. S. 369, 24 L. Ed. 416. In Missouri, as in Mississippi, there was a constitutional provision requiring a registration of all qualified voters. State v. Sutterfield, 54 Mo. 391."

In Great Southern Fire Proof Hotel Co. v. Jones, cited above, the question arose as to whether the courts of the United States were obliged to follow a decision of the Supreme Court of Ohio, holding a mechanic's lien statute obnoxious to the Constitution of Ohio. This decision had been made after the rights of the complainants under th statute had accrued. The decision of this court was that it was the duty of this court, under the circumstances, to exercise an independent judgment as to the validity of the act in question, upon which the rights of the complainants depended. This judgment was appealed. The Supreme Court, speaking by Mr. Justice Harlan, said:

"In our opinion neither the decisions of Palmer v. Tingle, Young v. Lion Hardware Co., 55 Ohio St. 423, 45 N. E. 313, nor any other case in the Supreme Court of Ohio precluded the Circuit Court from exercising its independent judgment as to the constitutionality of the statute of Ohio here in question. If, prior to the making of the contracts between the plaintiffs and McClain, the state court had adjudged that the statute in question was in violation of the state Constitution, it would have been the duty of the Circuit Court, and equally the duty of this court, whatever the opinion of either court as to the property construction of that instrument, to accept such prior decision as determining the rights of the parties accruing thereafter; but the decision of the state court, as to the constitutionality of the statute in question, having been rendered after the rights of the parties to this suit had been fixed by their contracts, the Circuit Court would have been derelict in duty if it had not exercised its independent judgment touching the validity of the statute here in question. In making this declaration we must not be understood as at all qualifying the principle that, in all cases, it is the duty of the federal court to lean to an agreement with the state court, where the issue relates to matters depending upon the construction of the Constitution or laws of the state."

The application of this exception to the general rule in the present case lies, not in the fact that the title of the purchasers at the foreclosure sale, the Wabash Railway Company, was acquired before the decision of the Ohio court in the Compton Case, for in fact the foreclosure decree of sale of March, 1898, was after both the Compton and Ham decisions, but in the fact that, by virtue of that sale and pur-

chase, that company has succeeded to all of the rights of the mortgagees, whose liens were enforced by that decree. The purchaser stands as the equitable assignee of the rights and liens of the mortgagee whose liens were enforced. Whatever defense they could have made against this claim of a superior lien the purchaser, who stands in their shoes, can make. If this Ohio construction, made long after their rights were acquired, would not have been such a decision as to conclude the Circuit Court if this lien had been asserted before the decree of sale, it is for the same reason equally nonconclusive against the purchaser under this foreclosure decree of sale. That these mortgagees took with constructive notice of the Ohio consolidation act and of the recorded agreement for consolidation must be conceded; but the legal consequence of that consolidation in creating a lien upon all of the property of the consolidated company to secure the unsecured debts of the consolidating companies, superior to all subsequent mortgages, was a question upon which they were entitled to be heard. The judgment in the Compton Case has no consequence as a prior adjudication, for the parties are not the same. Neither are the appellants estopped by the prior decision in the Ham Case for the same reason.

Assuming, then, for the purpose of this case, that the decision of the Ohio court in the Compton suit is a clear statutory construction, we are still of opinion that it is not such a decision, coming as it did after the rights of the mortgagees had accrued to which the Wabash Railway Company has succeeded, as to preclude that defendant from the benefit of the independent opinion of this court upon the same question.

We have not heretofore at all considered the duty of this court as a subordinate court of the United States to accept and follow the prior decision of the Supreme Court of the United States in Wabash, St. Louis & Pacific Railway Co. v. Ham and Others, 114 U. S. 587, 5 Sup. Ct. 1081, 29 L. Ed. 235. That case involved some of the same series of equipment bonds here in issue. The questions and the facts were identical with those in the later Compton Case. The court, in a clear and convincing opinion by Mr. Justice Gray, decided that neither under the Ohio consolidation statute, nor the consolidation agreement, was any lien created in behalf of the unsecured equipment note holders. If we are under no obligation to follow a later state construction of the Ohio statute, we clearly are obligated to accept this Ham opinion as covering the precise question which we are called upon to decide.

That opinion, if we may venture to say so, stands upon sound principles of statutory exposition, so far as the Ohio statute was involved, and as a declaration of general jurisprudence meets with our approval; but, were it otherwise, the question of whether it is to be adhered to in the exercise of an independent judgment, is a question for the Supreme Court. Until that opinion is overruled, the decision of the Supreme Court of Ohio in the Compton Case out of the way, it is obviously the duty of this court to follow it.

The result is that the decree of the Circuit Court must be affirmed.