BROOKLYN v. INSURANCE COMPANY.

1. Where the authorities of a town in Illinois, being thereunto empowered, subscribed in its behalf for stock in a railroad company, and issued its coupon bonds in payment therefor, the town, when sued by a *bona fide* purchaser for value of the coupons before maturity, cannot set up as a defence that the company disregarded its promise to construct the road, or that the town officers delivered the bonds in violation of special conditions not required by statute, and of which he had no knowledge or notice.

2. Where the bonds were signed by the town officers designated for that purpose by the charter of the company which authorized the issue of the bonds, after the requisite popular vote and the subscription, it is not necessary that the board of auditors or the other corporate authorities should participate in their issue and delivery.

3. Where a suit was brought by the town in the county court against the company and others, and a decree rendered that the bonds and coupons were null and void and should be surrendered for cancellation, — *Held*, that the decree bound the parties who were personally served with process or who appeared, and did not affect the other holders of the securities, who had only constructive notice of the suit.

4. In an action of debt, the jury were sworn to try "the issue." Two issues were joined, and the jury found "the issue" for the plaintiff, and assessed his damages. Judgment was rendered therefor. On a subsequent day of the term, the defendant moved the court to set aside the judgment and grant a new trial, but filed no reasons therefor, and thereafter failed to appear. The record presents no bill of exceptions showing to what point the evidence at the trial was directed. *Held*, that the denial of the motion furnished no ground for reversing the judgment.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

This action was brought by the Ætna Life Insurance Company, a corporation of the State of Connecticut, against the town of Brooklyn, in the State of Illinois, upon certain interest coupons detached from bonds issued in the name of that town. Besides the general issue, the defendant filed four special pleas.

The second plea, in substance, avers that the coupons in suit and the bonds to which they were attached were issued and delivered by the supervisor and town clerk of the town for stock claimed to have been subscribed to the Chicago and Rock River Railroad Company, an Illinois corporation, organized under an act approved March 24, 1869, and thereby authorized and empowered to locate, construct, and complete a railroad from a point on the south side of Rock River, near Sterling, *via*

Amboy, crossing the Chicago and Burlington Railroad, thence to intersect the Chicago branch of the Illinois Central Railroad, outside of the corporation at Chicago ; that the company, in order to induce the town to subscribe to its capital stock, pretended, by its officers and agents, to lay out the line of railroad through the town and near the village of Maluguis Grove, thence to its terminus on the Chicago branch of the Illinois Central Railroad, and gave out that it was about to construct and complete its road, and thereby establish a through line to Chicago, wholly independent of and a competing line with the Chicago, Burlington, and Quincy Railroad, which passes a few miles south of Brooklyn ; that on 20th September, 1869, an election was held to determine whether the town should subscribe $50,000 to the stock of the company ; that the notices for the election expressly stated that no bonds in payment of any subscription should be issued, draw interest, or be delivered to the company, until the railroad was completed and cars running through Brooklyn ; that a majority of the voters at such election voted to make the subscription; that on 23d May, 1870, William Holdren, the acting supervisor of the town, signed and executed as such a certain paper, purporting to subscribe $50,000 in the name of the town to the capital stock of the company, which subscription provided that it was made upon the express understanding set forth in the notices of election, and that no payment was to be made until the road was completed and the cars running through the town ; that the supervisor of the town had no authority or power to issue any bonds or coupons to the company until the road should be completed, which has never been done ; that just before the issuing of the bonds and coupons it was rumored in the town that the railroad was about to be transferred to the Chicago, Burlington, and Quincy Railroad Company, and was not to be built and completed as required by the notices of election and the terms of subscription ; that thereupon the agents and representatives of the Chicago and Rock River Railroad Company were notified that if the road was not to be built and completed as promised, the bonds and coupons would not be issued and delivered ; whereupon said agents and representatives informed the town and the citizens thereof that the company intended to complete

the railroad as promised, and as fast as men and money could do so ; that thereupon the supervisor and town clerk, relying upon such representations, but having no power or authority so to do, did, on or about Nov. 7, 1872, sign, issue, and deliver, in the name of the town, to the agents and representatives of the company, bonds to the aggregate amount of $50,000, with coupons attached, part of which are those sued on ; that as soon as the bonds and coupons were received by the company it utterly ceased and refused to prosecute the construction of the road, and abandoned the entire work, whereby the town failed to obtain any railroad to Chicago, or a competing road with that of the Chicago, Burlington, and Quincy Railroad ; that the representations aforesaid of the company's agents were knowingly false and fraudulent, but their falsity was unknown to the town, its supervisor, and clerk when the bonds were issued and delivered, and the issuing and delivery were procured by such false and fraudulent representations ; that the bonds and coupons are wholly void and in no wise obligatory upon the town, because the company had not at the time they were issued complied with the conditions prescribed by the election notices and the subscription ; that the town claims no interest in the stock of the company, which is worthless, and has been ever since the work was abandoned, and has received no value whatever for the bonds and coupons.

The third plea avers that the insurance company " is not a *bona fide* assignee of the interest coupons declared upon in said declaration, before maturity and without notice of the defences set up in the second plea."

The fourth plea avers that the bonds and coupons " were issued by the supervisor and town clerk of said town of Brooklyn, and delivered without the authority of the board of auditors or the corporate authorities of said town ; and the supervisor of said town who issued and delivered the same acted therein fraudulently and in collusion with the parties to whom the same were delivered, the said supervisor knowing at the time he had no such authority, and he having been elected supervisor on the express pledge on his part, and with the understanding between him and those who voted for and supported him, that he would not issue and deliver said bonds and coupons

until said Chicago and Rock River Railroad was completed its entire length to the Chicago branch of the Illinois Central Railroad."

The fifth plea avers that by a decree of the Circuit Court of Lee County, Illinois, rendered Nov. 14, 1873, in the action of the town of Brooklyn and others against the Chicago and Rock River Railroad Company and others, " it was ordered, adjudged, and decreed that the said pretended bonds and coupons of the said town of Brooklyn, so issued to the said Chicago and Rock River Railroad Company, and registered as aforesaid in the office of the auditor of public accounts of Illinois, are void and in no wise obligatory on the said town of Brooklyn, and that the same be surrendered up by the parties holding the same to be cancelled," which decree it is averred is in full force and effect; that the said insurance company was made defendant in such suit with the other holders and owners of the bonds and coupons issued by the town, by the name and description of " the unknown owners of certain bonds and coupons issued by Washington J. Griffin, the supervisor of the town of Brooklyn, Lee County, Illinois, to the Chicago and Rock River Railroad Company, purporting to be the bonds and coupons of said town of Brooklyn; " that said Circuit Court of Lee County had then and there jurisdiction of the subject-matter and the persons or parties defendant therein, by the issuing and return of process, and by proof of publication made as required by the statute of the State of Illinois in case of non-resident defendants.

To the plea of the general issue a joinder was filed, and to the third plea a replication was filed, averring that the insurance company became a *bona fide* assignee of the coupons declared upon before maturity, and for value, without notice of the defences set forth. To the second, fourth, and fifth pleas there was a general demurrer.

Upon the calling of the case for trial, the plaintiff moved the court " that a jury come to try the issue joined upon the plea herein. It is thereupon considered by the court that a jury came to try said issue, and thereupon came a jury, &c., . . . who were . . . sworn, well and truly to try said issue, and after, &c., . . . returned into court the following verdict, to wit: ' We, the jury, find the issue for the plaintiff, and assess

its damages to the sum of $5,511.'" Judgment was thereupon rendered for the plaintiff. Upon a subsequent day of the term, the town, by its attorney, moved the court to set aside the judgment and grant a new trial, but filed no grounds therefor in writing. The town failing thereafter to appear and sustain its motion, the same was overruled and the judgment ordered to stand in full force. The town then sued out this writ of error.

The errors assigned are, that the court below erred, 1st, in sustaining the demurrers to the second, fourth, and fifth pleas; 2d, in rendering judgment on the verdict of the jury.

*Mr. Milton T. Peters* for the plaintiff in error.

A general demurrer should not be sustained to special pleas, setting up a substantial defence, though the matter of them might be given in evidence under the general issue. The objection can be reached only by a special demurrer, or a motion to strike them from the files. *Pendleton County* v. *Amy*, 13 Wall. 297.

It is the established ruling of this court that to preclude a municipal corporation from insisting that it is not liable to pay its bonds and coupons, issued without the precedent performance of the conditions prescribed by statute, its constituted authorities must not only have decided that such conditions had been performed, but their decision must appear in the recitals of such bonds. Otherwise purchasers are not protected, if the non-performance of such conditions be shown. *Town of Coloma* v. *Eaves*, 92 U. S. 484; *Town of Vienna* v. *Murdock*, id. 494; *Marcy* v. *Township of Oswego*, id. 637; *Humboldt Township* v. *Long et al.*, id. 642; *Commissioners* v. *Bolles*, 94 id. 104; *Commissioners* v. *January*, id. 202; *Commissioners* v. *Clark*, id. 278; *County of Warren* v. *Marcy*, 97 id. 96.

If the pleadings on the part of the plaintiff do not aver such recitals, the estoppel does not arise. The plea setting up such non-performance is a valid defence to the action, where, as in this case, the plaintiff demurs instead of setting up in a replication such recitals by way of estoppel. *Pendleton County* v. *Amy, supra.* A want of authority to issue bonds is fatal to their validity, even though held by an innocent purchaser for value. They are void where the vote of the town

authorized their issue in a certain contingency which never occurred. *Township of East Oakland* v. *Skinner*, 94 U. S. 255; *Bissell* v. *City of Kankakee*, 64 Ill. 249; *Decker et al.* v. *Hughes et al.*, 68 Ill. 40; *Burr et al.* v. *City of Carbondale*, 76 id. 470; *Barnes* v. *The Town of Lacon*, 84 id. 461; *Middleport* v. *Ætna Life Insurance Co.*, 82 id. 568; *Supervisors of Jackson County* v. *Brush*, 77 id. 59; *People* v. *Dutcher*, 56 id. 149; Dillon, Mun. Corp. 524.

The foregoing decisions of the Supreme Court of Illinois establish that the issue by the supervisor and town clerk of bonds before the completion of the road having been expressly prohibited by the vote of the town, the subscription to the stock of the company was unauthorized, and that bonds issued in payment therefor are void. Those officers are not of themselves, in the constitutional sense of the term, the corporate authorities, and cannot, without the consent of the people, be clothed with the discretionary power of creating a debt. *People* v. *Solomon*, 51 Ill. 37; *People* v. *Mayar*, id. 17; *Lovingston* v. *Wilder*, 53 id. 305; *Marshall et al.* v. *Silliman et al.*, 61 id. 218; *Dunnavan et al.* v. *Green*, 57 id. 60; *Decker et al.* v. *Hughes et al.*, 68 id. 33; *Wiley et al.* v. *Silliman et al.*, 62 id. 170; *Town of Elmwood* v. *Marcy*, 92 U. S. 289. The proper tribunal to decide whether the road had been completed was the board of auditors, or corporate authorities of the town. The legislature could not deprive them of their legal and constitutional right to determine that fact, nor confer the authority upon the supervisor and town clerk.

By the vote the issue of the bonds was only authorized on the actual completion of the road, and not when the supervisor and town clerk should declare that such completion was an accomplished fact.

The second plea expressly negatives any presumption that the officers who issued the bonds had decided that the conditions of their issue had been performed. It alleges that such officers were induced to issue and deliver them upon the false and fraudulent assurances of the company, that it would thereafter complete the road. This has never been done. The road was abandoned by the company immediately upon its obtaining the bonds.

Recitals, if made by the supervisor and town clerk in the bonds that such conditions had been performed, would be unauthorized by the Constitution of the State, the act of the legislature authorizing such subscription and the issue of bonds, the vote of the people, the contract of subscription, and the actual facts.

After the court had sustained a general demurrer to the second, fourth, and fifth pleas, the defendant did not further appear. On motion of the plaintiff, a jury was called " to try the issue joined on the plea herein." The jury found the issue for the plaintiff. There having been two issues joined, the jury only determined one, leaving the other undisposed of. The judgment on that verdict is erroneous, and should be reversed.

*Mr. O. J. Bailey* and *Mr. J. H. Roberts, contra.*

MR. JUSTICE HARLAN, after stating the facts, delivered the opinion of the court.

The questions presented for consideration upon this writ of error seem to have been concluded by the former decisions of this court.

The facts set out in the second plea do not constitute a defence to this action. It is not averred in that plea that the insurance company had, at the time it purchased the coupons in suit, any knowledge or actual notice of the special conditions embodied in the election notice, and repeated in the formal subscription of May 23, 1870. Nor is it therein alleged that the bonds to which these coupons were originally attached contained recitals indicating that the subscription had been voted and made upon any conditions whatever. The defendant in error was undoubtedly bound to take notice of the provisions of the statute under which the bonds had been issued. But it was under no legal obligation to inquire as to the precise form or terms of the subscription, whether it was absolute or only conditional.

Had the insurance company, before consummating its purchase of the coupons, examined the act incorporating the Chicago and Rock River Railroad Company, it would have ascertained : 1st, That the statute made no provision for condi-

tional subscriptions. 2d, That upon the approval by a majority of the legal voters of any incorporated city, town, or township, along or near the route of the road, at an election called and held for such purpose, in the mode prescribed by law, it was made, by the express words of the statute, the duty of the president of the board of trustees, or other executive officer of such town, and of the supervisor of such township, to make the subscription voted for, receive certificates therefor, and execute to the company bonds of the required amount, bearing interest, payable annually, and signed by such president, executive officer, or supervisor, and attested by the clerk of the municipality in whose name the bonds were issued. 3d, That, within ten days after the approval of a subscription by popular vote, it was the duty of the clerk to transmit to the county clerk a statement of the vote given, the amount voted, and the rate of interest to be paid ; and, within like period, after bonds were issued, to file with the county clerk a certificate showing the amount and number of bonds issued, and the rate of interest to be paid. If it be suggested that the statement thus directed to be transmitted to and filed with the county clerk would inform the purchaser whether the subscription was conditional or absolute, a sufficient response is, that such statement might have been in conformity with the letter of the statute without setting forth the precise nature of the subscription. But a conclusive answer is, that there is no averment that any such statement was prepared, transmitted, or filed, or if filed, that it indicated the conditional nature of the subscription, by reference either to the election notice, or to the formal subscription of May 27, 1870. The plea shows that "the town and the citizens" (to adopt the language of the plea) were assured by the agents and representatives of the railroad company that the latter intended, in good faith, to perform the special conditions annexed to the subscription, and that all rumors to the contrary were without just foundation. These assurances were credited, and, in reliance upon them, the supervisor and clerk executed and delivered the bonds, knowing, at the time, that the conditions imposed by popular vote, as well as by the terms of the subscription, had not been complied with. Thus was faith in the promises of a

railroad company substituted for a contract which, had the town stood upon it, would either have secured the construction of the road, as contemplated, or guarded its people against a burden which has been imposed upon them through the fraudulent conduct of railroad officials, and the violation, by its own officers, of the trust committed to them.   By the act of the town's constituted authorities, who, by the statute, had the right, under certain circumstances, to execute and deliver the bonds and coupons, the railroad company was enabled to put them upon the money market in advance of the construction of the road.   It is now too late for the town to claim exemption, as against *bona fide* purchasers, upon the ground that the railroad company disregarded its promise to construct the road, or upon the ground that its own officers delivered the bonds in violation of special conditions, of which the purchasers had no knowledge or notice either from the statute or otherwise.   The remedy of the city is against the railroad company, and its own unfaithful officers, who, it is alleged, were in fraudulent combination with the company.

For the reasons already stated, the fourth plea must also be held to be insufficient.   The bonds were signed by the officers designated for that purpose by the charter of the railroad company, and, after the vote and subscription, it does not seem to have been necessary that the board of auditors or other corporate authorities of the town should have participated in their issue and delivery.

The fifth plea is radically defective.   The suit commenced and determined in the Circuit Court of Lee County was a proceeding wholly *in personam*, against the holders and owners of bonds and coupons which had been issued in the name of the town, and delivered to the railroad company.   Upon principle and authority, no decree therein rendered could bind any one not personally served with process, or who did not appear. It could not affect the rights of non-resident holders of bonds and coupons, proceeded against by constructive service.   Such service, as to them, was ineffective for any purpose whatever.   *Pennoyer* v. *Neff*, 95 U. S. 714, and authorities there cited.

We come now to consider the remaining assignment of error,

viz., that the court erred in rendering judgment upon the verdict. This objection rests upon the ground that although there were two issues to try, — those arising under the first and third pleas, — the jury were sworn to try " the issue," and found only " the issue " for the defendant in error.

We observe, from the record, that after the demurrer to the second, fourth, and fifth pleas was sustained, the city failed to appear, by attorney, at the trial before the jury. After verdict, a motion was entered to set aside the verdict and judgment and grant a new trial. But no written grounds were filed in support of the motion. Nor did the city appear at the hearing of the motion, and urge any reason for its being granted. It was, consequently, denied, and, in this court for the first time, specific objection is made that the jury were sworn to try, and, in fact, tried but one issue, and that it is impossible from the orders of the court to say what issue was tried. We decline to consider the objection. If the attention of the court below had been called to this matter, the objection might have been obviated. There is no bill of exceptions showing to what point the evidence was directed, and we will assume, under the circumstances of the case, that all the issues were tried which were presented in due form for trial, or which the parties desired to be disposed of. *Laber* v. *Cooper,* 7 Wall 565.

Our conclusion is that no error was committed in the court below.

*Judgment affirmed.*

MR. JUSTICE BRADLEY did not sit in this case, nor take any part in deciding it.