## BECK et al. v. OTERO IRR. DIST. et al.

District Court, D. Colorado.
June 19, 1929.

No. 8564.

C. R. Skinker and Pierpont Fuller, both of Denver, Colo., for plaintiffs.

Smith, Brock, Akolt & Campbell, of Denver, Colo., for defendant Earl Wilcox.

James H. Pershing, of Denver, Colo., Fred A. Sabin, of Pueblo, Colo., and Geo. L. Nye, Robert G. Bosworth, and E. M. Sabin, all of Denver, Colo., for defendants Otero Irr. Dist., Tate, Reddick, Norton, La Junta Canal & Reservoir Co., United States Nat. Bank, and Colorado Nat. Bank of Denver.

KENNEDY, District Judge (of United States District Court of Wyoming, sitting in Colorado).

This cause has been the basis of more or less concern to the writer since it was found imbedded in a rather innocent looking calendar taken on in the Colorado District in the fall of 1928. Extended oral arguments were heard and briefs after various extensions filed by several sets of litigants. When it is realized that the pleadings cover considerably more than 100 pages, the briefs submitted afford more than 365 pages, and the authorities cited upon the several points involved are in excess of 1,000, the magnitude of the work involved for a trial judge can quite readily be sensed. I am impressed with the thought that this is a case involving intricate legal problems and such far-reaching results as it may affect property rights, that as much delay as possible should be eliminated in seeking final solution. The suit is a child born to inherit greater heights than is permitted by the lowly jurisdiction of a district court, and it would seem an offense by a district judge to unduly retard its progress into the higher spheres of judicial determination. The suit is one in which a trial court may well feel justified in adopting the sometime policy of high courts in announcing "conclusions" only.

The object of the suit is to bring into a court of equity an irrigation district organized under public laws for the purpose of subjecting it to some operation which will furnish relief to the adjudicated holders of bonds and interest coupons for the payment of the debts thereby represented. The bill is attacked by motions to dismiss on behalf of some of the defendants and by special pleas involving the same points in answers filed by others.

### The Pleadings.

The plaintiffs, residents and citizens of states other than Colorado, are the holders of judgments based upon certain bonds and coupons issued by the defendant the Otero Irrigation District, and the defendants are residents of the state of Colorado; the defendant irrigation district being a corporation organized under the public irrigation district laws of that state. Each of the plaintiffs has a judgment in excess of the sum of $3,000, exclusive of interest and costs. The law under which the irrigation district was organized was passed by the General Assembly of Colorado in 1901 (Laws 1901, p. 198), and the district was organized thereunder in 1902. Thereafter bonds were issued by the district in the sum of $300,000, bearing interest coupons. The act of 1901 was thereafter superseded by subsequent acts of the Assembly in 1905 (Laws 1905, p. 246) and 1907 (Laws 1907, p. 488), which somewhat enlarged the powers of such irrigation dis-

tricts; and in 1906 additional bonds were issued in the sum of $160,000. Thereafter and in 1909, additional bonds in the sum of $40,000 were issued, and in 1910 bonds in the sum of $150,000 were issued. The plaintiffs acquired some of these bonds for a valuable consideration, which were thereafter merged into judgments as hereinbefore stated. Under the terms of the acts and the bonds themselves, the bonds and interest were to be paid from the assessments upon real property in the irrigation district. In 1915 (Laws 1915, p. 307) the Assembly of Colorado passed an act which provided for the dissolution of public irrigation districts and specified the manner in which such dissolution should be accomplished by court procedure. Such action was designated by the Legislature to be a "proceeding in rem." In 1923 the dissolution of the defendant irrigation district was attempted in one of the state courts of Colorado. Two of the defendants Wilcox holding a substantial number of the bonds, alleged in that proceeding to be the entire outstanding indebtedness of the district, made an offer to reorganize the district into a private corporation involving a sale of the property to such new company. The trustees of the district called an election of the landholders and a vote favorable to the dissolution and sale was had. Thereafter the property of the district was transferred to the defendant, the La Junta Canal & Reservoir Company, a private corporation, new bonds upon the system were issued by the new company of which the defendant banks were trustees, and the new company proceeded to discharge the functions of distributing water to the landholders as before. The property of the irrigation district consists of valuable reservoirs and canals, rights of way, easements, buildings, headgates, dams, etc. In the dissolution proceeding, notice was purported to be given to the holders of the outstanding indebtedness of the district by notice published in the county paper where the irrigation district property was situate. At the hearing had in the state court for a dissolution, also involving the liquidation of the indebtedness, only a portion of the holders of outstanding bonds appeared and submitted their evidence of indebtedness. Others of the bondholders appeared subsequently to the dissolution decree, were denied relief, and upon appeal to the Colorado high court were recognized as legitimate creditors, and the lower court was directed to recognize them as such and to adjust their claims, in which event the decree of the lower court would be affirmed, and,

failing in this, the decree would be reversed. Michigan Trust Co. v. Otero Irrigation District, 76 Colo. 441, 232 P. 919. A rehearing in the case was filed, and rehearing denied in February, 1925. The suit at bar was instituted November 1, 1927. The bill is long, being divided into some 33 paragraphs and covering in excess of 60 pages. The foregoing is the briefest kind of a statement of the pleading's content and does not purport to give all the elemental or essential allegations, but simply to state it in sketchy outline.

Likewise, for the purpose of this memorandum, the motions to dismiss and special pleas filed by the defendants will not be outlined in detail, but the principal points raised under them merely cited to lend a degree of intelligence to the court's conclusions.

Points Raised by Special Pleas and Motions.

■ 1. That the dissolution decree is a bar to plaintiffs' suit.

It is contended by counsel for defendants that, under the law passed in 1915 providing for a method of dissolution of a public irrigation district, defining the procedure and declaring such a proceeding to be one in rem, the court through which the proceeding purported to be carried out drew to itself the jurisdiction of the entire matter, including the adjudication of the outstanding indebtedness. It is a well-known procedure in equity by which incumbered properties are handled in courts of equity, including the adjudication and liquidation and indebtedness secured and unsecured. These are proceedings in rem not because of any statute so declaring, but on account of the nature of the proceeding itself. The basis of such a proceeding is usually the custody by the court of the property or thing being adjudicated and administered. Ordinarily it arises through a receivership, attachment, or other method by which the court comes into actual possession of the property. So far as the pleadings in the case at bar disclose, the property of the defendant irrigation district was never in the custody or possession of the state court throughout the dissolution proceeding, nor does it appear that such custody was authorized or contemplated by the act. The plaintiffs, as holders of the bonds of the district, being nonresidents of the state, were served with no process other than the advertisement in the local paper. As it appears to me, therefore, at the present stage of the case, it would be presuming too much to hold that the dissolution proceeding was actually one in rem which would bind those holding securities

upon the property without personal service upon them. In this view the dissolution proceeding would not be a bar to plaintiffs' suit.

■ 2. That the plaintiffs are not entitled to equitable relief because of the nature of the bonds and interest coupons and the laws under which they were issued.

It is earnestly urged in behalf of the defendants that the plaintiffs have no equitable lien upon the property of the irrigation district, that the district and its officers were not in a position of trust with relation to the bondholders, and that the method provided for the raising of money for the redemption of bonds and interest was by assessment of the irrigated lands within the district in the manner provided by law, to wit: The certification of the amount to be raised by the officers of the district to the county commissioners who would make levies upon the lands for the amounts in the manner provided for other taxes; and that therefore there is no manner in which plaintiffs can be said to have a lien or the benefit of a trust with relation to the property of the district itself, which plaintiffs seek to here secure. It may be admitted that the bonds and interest are by virtue of the law and the terms of the bonds themselves to be paid out of assessments to be levied and raised in the manner indicated. Were the district still functioning as a public irrigation district and in a position to continue certifying the assessments necessary to keep up the maintenance and pay the indebtedness, this contention of defendants would be appealing. Where the landowners of the district, however, by affirmative vote, and the officials of the district have carried out a plan of dissolution by which the machinery provided for satisfying the indebtedness of the district has voluntarily passed out of their hands and has ceased to function, it is at least questionable whether it is not within the inherent power of a court of equity to reconstruct such machinery as will effectually provide for the carrying out of those functions. It may be that plaintiffs would not be entitled to all or very much of the relief which they seek by prayer of the bill, such as the sale of the physical property of the district, but, if they have stated a case which entitles them to any equitable relief, a court of equity will usually find ways and means of securing it. Interrelated to this subject is the seeming provision of the law under which the district was organized and the bonds issued, that there could be no dissolution of the district without the payment of, or adequate

security for, its outstanding indebtedness. The Supreme Court of Colorado seemed to take this view of the situation in the Michigan Trust Company Case above cited, and it is difficult to analyze the decision in that case so as to hold that the Michigan Trust Company must have its debt satisfied, but that the same rule should not apply to the claims of the plaintiffs, both being of the same class and nature, unless it be held that the dissolution proceeding was adequate and sufficient to bar plaintiffs because they did not come in and present their claims.

■ 3. That the plaintiffs have an adequate remedy at law.

The defendants contend that whatever rights plaintiffs had under the bonds to force payment they still have, having secured the adjudication of their claims in the manner provided by law. As before stated under point 2, this might be conceded were the district still being maintained under the control of the landholders and the properly elected officials, but in the present instance it seems that the property of the district and its officials have voluntarily surrendered the property and their official positions so that they are no longer able to respond to any mandamus suit which might be instituted to carry the judgments and claims of plaintiffs into effect. This presents a serious situation in which, unless the plaintiffs be afforded relief in a court of equity, they are without any remedy to effect the collection of their claims, and for this reason the special plea should not be sustained.

■ 4. That the suit is barred by the Colorado statute of limitations.

This plea is entered upon the assumption that the suit is one founded in fraud, the period of limitation for which under the Colorado statute is three years. Counsel for plaintiffs assert in their oral argument and in brief that it is not an action founded in fraud in the ordinary sense, and that the term fraud is considered by the statute, and I am in accord with counsel's theory of the case.

■ 5. That the suit is barred by laches.

Upon this point there are allegations of the petition which seem to justify a delay of the suit until after the time when the matter had been finally determined by the Colorado Supreme Court. Assuming that plaintiffs would be justified in delaying the institution of a suit to determine their rights until the rights of others similarly situated had been

passed upon, the court would not feel justified in sustaining the plea of laches, as it appears upon the face of the bill at the present time, although other circumstances and conditions developing from a hearing upon the merits might possibly lead to a different conclusion.

6. That there is a misjoinder and nonjoinder of parties plaintiff.

It is contended by defendants that plaintiffs have no right to be joined as plaintiffs in the suit at bar. Under Equity Rule 37 (28 USCA § 723) and that portion which reads: "All persons having an interest in the subject of the action and in obtaining the relief demanded may join as plaintiffs," it seems to me that there is ample justification for the plaintiffs' bringing a joint action here, as they are all in identically the same situation and are jointly interested in obtaining relief. Neither does it occur to me that other parties who may be in a similar situation constitute an improper nonjoinder under the present circumstances. Only by inference from the bill, and not from positive averment, does it appear that there are others who are in a similar situation to plaintiffs. Assuming that there may be other outstanding indebtedness, it nowhere appears that there are others who have reduced their claims to judgment in a competent court of jurisdiction as have the plaintiffs here.

7. That there is a nonjoinder or absence of necessary parties defendant.

It is again called to the attention of the court by counsel for defendants that a variety of other parties should be named as defendants, because their interests will be affected by a decree. For example, the holders of bonds under subsequent issues of which defendant banks are trustees, and the landholders within the district. I think the law is satisfied by bringing in the trustees of these bondholders who are supposed to, and whose duty it is to, represent them, and the landholders by whose vote the attempted dissolution was carried out are sufficiently represented by the district and its trustees, assuming that the decree of dissolution cannot be taken as sufficient to affect the rights of plaintiffs in the premises.

It is usually difficult to dispose of the substantial rights of parties in litigation upon preliminary motions unless the questions presented are so clean cut that there is apparently but one side to the controversy. In the instant case the circumstances and issues appear to be so complicated that, if I were to decide the case eventually, I should prefer to do so upon the merits after a final hearing. And with this explanation of having rather summarily disposed of the motions to dismiss and special pleas with the use of only one or two authorities out of the mass presented, the ruling of the court will be that the motions and special pleas will be overruled, reserving proper exceptions to all defendants and giving those who have not answered 30 days to do so, if they may be so advised.