BECK et al. v. OTERO IRR. DIST. et al.
No. 8564.

District Court, D. Colorado.
May 29, 1931.

C. R. Skinker and Pierpont Fuller, both of Denver, Colo., for plaintiffs.

Fred A. Sabin, of Pueblo, Colo., for defendants La Junta Canal & Reservoir Co. and others.

Smith, Brock, Akolt & Campbell, of Denver, Colo., for defendants Mary E. Wilcox and another.

James H. Pershing, George L. Nye and Robert G. Bosworth, all of Denver, Colo., for defendants United States Nat Bank and another.

KENNEDY, District Judge.

This suit in equity was before the court nearly two years ago upon motions to dismiss and special pleas raised by the answers of some of the defendants, which points were argued, later considered and disposed of, in a memorandum opinion under date of June 19, 1929, and on file in the cause under date of June 20, 1929. 38 F.(2d) 275. The motions to dismiss and special pleas in the answers having been overruled, answers were subsequently filed by the defendants who had interposed motions and the cause set for final hearing upon the merits. Evidence was taken on behalf of both plaintiffs and defendants, followed by arguments and the submission to the court upon trial briefs. The briefs are voluminous, and contain the citation of sufficient authorities to afford a trial judge reading material for a year should he attempt to review them all. The evidence taken does not in my opinion in any substantial degree change the issues upon which a decision in the cause must depend, and counsel must agree with this analysis because many of the points, and particularly the more important ones presented upon the former motions, are again raised in this final hearing.

Time forbids a complete history of and rehearsal of the facts leading up to the present litigation, but a sketch of the principal features may be sufficient to lend a degree of intelligence to the views of the court upon this extremely intricate, complicated, and important lawsuit.

The defendant the Otero Irrigation District was organized in 1902 under a statute of the state of Colorado relating to irrigation districts. (Laws 1901, p. 198.) Later in the same year, and in accordance with the provisions of that statute, the district began the issuance of bonds. The following issues were made thereafter: In 1902, $300,000; in 1906, $160,000; in 1909, $40,000; and in 1910, two issues in the sum of $150,000 each, making in all a total of $800,000 in bonds. During this period the law was changed by legislative enactment at various times, but in no way which made a difference in the legal nature of the bonds. The bond issues were effected upon the vote of the qualified electors of the irrigation district, and were judicially confirmed by a court in accordance with the statute, declaring said bonds to be the legal indebtedness of the district. These bonds were sold in regular course upon the market, and the proceeds were used for the purpose of building the irrigation system, acquiring water rights and other necessary equipment for putting the system into efficient use. At least the greater portion of these bonds had been disposed of, for, when the purported dissolution of the district hereinafter referred to took place, there were outstanding of the face value of said bonds which had not been paid in excess of $650,000. It was provided in said bonds that the principal and interest thereon should be paid by revenue derived from annual assessments upon the real property within the irrigation district, and such assessment and the bonds were made a lien upon such real property. In 1915 the Legislature passed an act (Laws 1915, p. 307) providing for the dissolution of such statutory quasi public irrigation districts, which act provided for a court hearing in a state court upon a petition for such dissolution, after notice by publication in a paper to all persons holding claims of indebtedness against the district, and providing further that any one interested and holding such indebtedness might appear and test the validity of the proceeding. It was provided that the court should thereupon determine the indebtedness of the district, together with the rights and liabilities of all parties. The act further provided that the court might decree a sale or exchange of its assets in such manner as it might seem best, which in the opinion of the court should provide an adequate security for the ultimate payment or complete liquidation of all the indebtedness of the district. In 1923, by which time the district was in a precarious financial condition, with its principal and interest payments, or many of them, due and unpaid, although, assessments and levies having been made for such purpose and many certificates of tax sale having been bartered, exchanged, and sold among bondholders and others, the dissolution proceeding was instituted in a state court of Otero county, Colo., by officials of the irrigation district upon a proposal of the defendants Wilcox, holding a considerable portion of the bonds, interest coupons, and certificates against the district by which they were to turn in said evidences of indebt-

edness upon the turning over of the property of the district, including the irrigation system, to a corporation organized among the landowners and to receive a certain amount of bonds to be issued by the new irrigation company, which became the La Junta Canal & Reservoir Company, a defendant in this proceeding, the Wilcoxes receiving from the old irrigation district the cash on hand, approximating $13,000, and advancing to the new company cash out of which the system would be rehabilitated. A hearing was had upon the petition and the proposal looking to the dissolution of the old district, after notice was published as hereinbefore stated, advising all holders of outstanding indebtedness of the district of their right to appear.

After several adjournments, an adjudication was made by the court to the effect that the indebtedness of the district consisted substantially of what the Wilcoxes had turned in of their bonds, coupons, and certificates, together with one other bondholder of a portion of his bonds, who is a plaintiff in the case at bar, and a decree was made authorizing the transfer of the property of the district to the new company, approving in all respects the arrangement between the district with the Wilcoxes, cutting off all owners of indebtedness who had not submitted their claims, and in substance winding up the affairs of the old district. Later, the Michigan Trust Company and one Dalton, having attempted to intervene with their claims based upon bonds, and being denied relief by the court of original jurisdiction, appealed their cause to the Supreme Court of the state of Colorado (76 Colo. 441, 232 P. 919; 76 Colo. 438, 232 P. 922), which court found error on the part of the trial court, in that the claims had not been recognized, and directed that the claims of the two appealing plaintiffs should be allowed and paid, or that the entire proceeding would be set aside. At various times from 1916 to 1926, the plaintiffs, all nonresidents of Colorado, holding unpaid and matured bonds and interest-bearing coupons of the defendant district, all claims being in excess of $3,000, went into the federal court, and prosecuted such claims to judgments against the district, which judgments, according to loose computation, aggregate in excess of $150,000, with costs, and with the credit of certain payments the amount due upon these judgments has been reduced in round figures to something over $100,000. In addition, it appears that one of the plaintiffs holds interest coupons in excess of $600, which claim has not been reduced to judgment. While I do not have

the record in the case before me, I am of the opinion that it is made to appear that statutory assessments had been made to cover such indebtedness, both of principal and interest, and levies made upon the lands of the district, which assessments and levies failed to produce the funds sufficient to liquidate the indebtedness and that these same claims are the ones upon which the judgments of plaintiffs are based. These judgment creditors, as joint plaintiffs in this court, now seek equitable relief. The defendants Tate, Reddick, and Norton are former trustees of the irrigation district during the dissolution proceeding. The defendant Banks are joined because after the completion of the so-called dissolution proceeding, new bond issues were made in which the Banks became the trustees under such loans, supported by deeds of trust to them from the La Junta Canal & Reservoir Company.

In the foregoing there has been no particular pretense of adhering strictly to dates, amounts, or detail of description concerning the various transactions involved, but the attempt has been merely to give a kaleidoscopic picture of the situation in which the litigants now find themselves.

▬ The first point which suggests itself to the court as one of the determining factors in the analysis of the rights of plaintiffs is as to whether or not the plaintiffs were and are bound by the dissolution proceedings, because, if it should be determined that they were so bound, whatever rights they may have had are summarily cut off, and they have no standing in this court. The defendants assert, and strenuously maintain that the dissolution proceeding in the state court was a proceeding in rem which bound and cut off all claimants holding evidences of indebtedness against the irrigation district, unless they came in and submitted themselves to the jurisdiction of the state court. The law of 1915 providing for such dissolution specifically designated that it should be a proceeding in rem. (Laws 1915, p. 309, § 4.) Three reasons suggest themselves to my mind as to why this was not such a proceeding in rem as would bind the plaintiffs, despite the specific language of the law: First, I take it that merely because a statute may designate a proceeding as one in rem does not make it so. The principle of such a proceeding is one well known to the law from the earliest history of English and American jurisprudence. It usually has been considered as involving the custody of property by the court whose jurisdiction has been invoked by which

the property itself is virtually brought into the possession of the court. Cooper v. Reynolds, 10 Wall. 308, 19 L. Ed. 931; Rose v. Himely, 4 Cranch, 241, 2 L. Ed. 608. Under the statute in question, as I read it, it was not contemplated that there should be any seizure of the property of the district through the process of a receivership, attachment, or otherwise, nor was there in fact any attempted bringing of the physical property into the possession of the court. The whole proceeding was simply one, in its final analysis, to determine the indebtedness of a quasi public irrigation district having substantially the same status as a municipality, and then authorizing the representatives of the district to sell or exchange its property. Second, as I read this statute, authority to the court is given to grant a sale or exchange of the assets when in the opinion of the court the proposed transfer "provides an adequate security for the ultimate payment or complete liquidation of all, the indebtedness of the district." Certainly no provision was made for either the payment or liquidation of a substantial portion of the indebtedness of the district at the time the order of dissolution was made. The bonds in controversy had by a decree of the court been declared to be an indebtedness of the district. In passing, it may be observed that, when bonds and coupons to an amount of a little in excess of $425,000 only were turned in when the legal representatives of the district at the time knew that there were outstanding indebtednesses of the district in excess of $650,000 represented by the regularly issued and judicially declared legal bonds, the court issuing the order of dissolution must have been imposed upon by such officials if the full facts of the outstanding indebtedness were not brought to its attention; unless, of course, the theory were indulged that, when an assessment and levy had failed to produce funds for the payment of the bonds, they were no longer an indebtedness of the district, which will be later discussed. And, third, I am extremely in doubt as to the efficacy of a legislative act purporting to compel nonresident bondholders to come into a state court which is given exclusive jurisdiction for the purpose and to submit their claims, when at the time they have the right to have those claims litigated under the acts of Congress in the federal court. The thought is expressed in Lincoln County v. Luning, 133 U. S. 529, 10 S. Ct. 363, 33 L. Ed. 766, where a portion of the syllabus reads as follows: "No state statute exempting a county in the State from liability to suit except in the courts of the coun-

ty can defeat the jurisdiction of suits given by the Constitution to the Federal courts."

In Chicot County v. Sherwood, 148 U. S. 529 at page 533, 13 S. Ct. 695, 697, 37 L. Ed. 546, the opinion of the court says:

"If, therefore, the presentation of a demand to the county court under the Arkansas statute is not the commencement of a suit against the county, then, under the rule stated in Delaware County v. Diebold Safe Co. [133 U. S. 473, 10 S. Ct. 399, 33 L. Ed. 674], just quoted, the court to which such demand may be carried after allowance or rejection receives and determines it as an original cause. In either case the suit is so maintainable in the state courts as to be cognizable by original process in a federal court, where the parties have the proper citizenship to confer jurisdiction. Any other view of the subject would prevent citizens of other states from resorting to the federal courts for the enforcement of their claims against counties of the state, and limit them to the special mode of relief prescribed by the act of February 27, 1879. The jurisdiction of the federal courts is not to be defeated by such state legislation as this. In Hyde v. Stone, 20 How. 170, 175 [15 L. Ed. 874], it is said: 'But this court has repeatedly decided that the jurisdiction of the courts of the United States over controversies between citizens of different states cannot be impaired by the laws of the states, which prescribe the modes of redress in their courts, or which regulate the distribution of their judicial power. In many cases state laws form a rule of decision for the courts of the United States, and the forms of proceeding in these courts have been assimilated to those of the states, either by legislative enactment or by their own rules. But the courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction. Suydam v. Broadnax, 14 Pet. 67 [10 L. Ed. 357]; Union Bank v. Jolly's Administrators, 18 How. 503 [15 L. Ed. 472].' This principle has been steadily adhered to by this court.

"In the case under consideration the state statute relied on to defeat the jurisdiction of the United States circuit court was passed after the bonds sued on were issued and put in circulation, and if its requirement of presenting the bonds to the county court of Chicot county 'for allowance or rejection' was binding upon citizens of other states holding such bonds, * * * it would present a

very grave question whether it was not such a substantial and material change in the remedy in force when the contract was made as to impair its obligation. But it is not necessary to consider and determine that question, as the objection is merely to the jurisdiction of the circuit court, and, for the reasons already stated, is not well taken."

In this connection, it will be noted that the bonds in controversy were all issued prior to the enactment of the Colorado statute under which the purported dissolution was attempted. In Mercer County v. Cowles, 7 Wall. 118, at page 122, 19 L. Ed. 86, the court said: "The power to contract with citizens of other States implies liability to suit by citizens of other States, and no statute limitation of suability can defeat a jurisdiction given by the Constitution. We cannot doubt the constitutional right of the defendant in error to bring suit in the Circuit Court of the United States upon the obligations of the County of Mercer against the plaintiff in error."

In Brooklyn v. Insurance Co., 99 U. S. 362, at page 370, 25 L. Ed. 416, Mr. Justice Harlan, speaking for the court, says: "The suit commenced and determined in the Circuit Court of Lee County was a proceeding wholly in personam, against the holders and owners of bonds and coupons which had been issued in the name of the town, and delivered to the railroad company. Upon principle and authority, no decree therein rendered could bind any one not personally served with process, or who did not appear. It could not affect the rights of non-resident holders of bonds and coupons, proceeded against by constructive service. Such service, as to them, was ineffective for any purpose whatever. Pennoyer v. Neff, 95 U. S. 714 [24 L. Ed. 565], and authorities there cited."

These cases are but an indication of the many decisions of the federal courts upon this subject. Even the Supreme Court of Colorado in Michigan Trust Co. v. Otero Irrigation District, 76 Colo. 441, 232 P. 919, very strongly indicated its view that the plaintiffs holding evidences of indebtedness against the district which had not been liquidated, or in regard to which adequate security for ultimate payment had not been provided, were entitled to protection. Likewise in the Dalton Case, 76 Colo. 438, 232 P. 922, if the non-appearing claimant had been successfully cut off by the dissolution proceeding, there was no particular legal right which he had to later come into the proceeding and under the

decision of the court secure a modification of the original judgment to include his claim. If this reasoning is sound, the matter of the mere knowledge of some of the plaintiffs of the dissolution proceeding through counsel, but without formal appearance, as suggested by the evidence here, would not affect their position in this suit. For the reasons stated, I arrive at the conclusion that the plaintiffs in this respect were not bound nor cut off by the dissolution proceeding.

Another important point upon which counsel hold widely divergent views is as to whether or not, the district and county officials having had assessments and levies made under the statutes upon the lands comprising the irrigation district for the payment of plaintiffs' bonds and coupons, and plaintiffs having failed to avail themselves of the purchase of certificates of sale, their remedy for the collection of the indebtedness is exhausted. This apparently is an extremely controversial question upon which the courts are seemingly divided. The Supreme Court of Colorado, in the case of Thomas v. Henrylyn Irrigation District, 79 Colo. 636, 247 P. 1059, strongly indicates that the only source of payment of the bonds is in the assessment of the adequate amount to meet the accruing payments of principal and interest. Likewise the case of Interstate Trust v. Montezuma Valley Irrigation District, 66 Colo. 219, 181 P. 123, would seem to so hold. Then arises the question as to whether or not, a levy having been made and failing to produce the funds sufficient to liquidate the indebtedness, the holder of the bonds is remediless, unless they take the lands at tax sale or the certificates of such sale, or whether additional levies may be enforced for the purpose of liquidating the indebtedness.

Upon this point the courts also seem to have differed, as I view the decisions. In Norris v. Montezuma Valley Irrigation District, 248 F. 369 (C. C. A. 8), the Circuit Court of Appeals of the Eighth Circuit reversed the United States District Court of Colorado, and held, in substance, that an irrigation district, existing as in the case at bar, is required to make a sufficient assessment, levy, and collection of taxes to actually pay the debt, and that provisions of the state Constitution and statutes are not violated when an additional levy is made on all the property in the district because of the failure of some of the taxpayers to pay their proportion of the first levy. The holding of the court in this case is fairly set forth in the

third, fourth, and fifth paragraphs of the syllabus, which read as follows:

"A statutory obligation of a municipal or quasi municipal corporation to pay its debt, or to fix a rate of levy necessary to provide the amount of money required to pay its debt, is not satisfied by an assessment and rate of levy sufficient to pay the debt if the taxes are collected, but requires that there be a sufficient assessment and levy and collection of the taxes as levied actually to pay the debt.

"Provisions in state Constitution and statutes that assessments or levies for taxation shall be uniform upon the same class of subjects, or by value, are not violated when, after lapse of a reasonable time, and after reasonable efforts have been made to collect the first levy, as for the cost of an irrigation improvement, an additional levy is made on all the property in the district, because of the failure of some of the taxpayers to pay their portions of the first levy.

"Where the debt of an irrigation district to its bondholders had not been paid, when they sued for mandamus to compel a levy of assessment against lands of the district to pay a judgment on interest coupons, about 18 months after the coupons became due, and the lands delinquent under a prior assessment had been offered for sale for taxes, but had only been struck off to the county for lack of other buyers, and only a small number of such sales had been redeemed, the number of taxpayers who refused to pay increasing year by year, so that no further collection of any substantial sums from prior levies was to be expected, the bondholders were entitled to mandamus to compel levy of assessment against the lands of the district to pay the judgment on the interest coupons."

I shall content myself with adhering to this construction of the rights of bondholders of an irrigation district organized under the general law of Colorado. It may be noted that the decisions of state courts and others to the contrary were handed down a considerable time after the bonds in controversy were issued. It may also be noted that a certiorari was denied by the Supreme Court in the Norris Case, as recorded in 248 U. S. 569, 39 S. Ct. 10, 63 L. Ed. 425.

Other contentions of the defendants were largely disposed of upon the motion to dismiss and answers there presenting the same points. This includes the defense of laches, and to my decision indicated in the former memorandum I shall adhere.

█ As it appears to me, if the plaintiffs were not cut off by the dissolution proceedings, and if they have the right to a continuing assessment and levy upon the lands in controversy until their indebtedness is actually paid, which it is admitted never has been paid, they are entitled to some remedy at the hands of a court of equity. Certainly it does not seem equitable to hold that, by some manipulation of the irrigation system by which it is found in the hands of a private corporation made up of the landowners, the plaintiffs should be left standing with their bare judgments ineffectual under the present condition to be in any wise enforced, while the lands upon which they were given a lien and the machinery under which they stood to have their indebtedness liquidated have slipped from under them through a so-called reorganization with new obligations, and in the meantime plaintiffs' demands in the premises are entirely ignored. It would not seem that there is any adequate remedy for the plaintiffs at the present time and under the present circumstances for the plaintiffs to secure relief while the irrigation system itself has passed into other and independent hands, to which the landowners under said project are paying allegiance.

█ Nor does it occur to me that the rights of the plaintiffs under their contract fairly presume a lien upon the irrigation system and physical property thereof itself which would entitle them to a sale of said irrigation system for the liquidation of their indebtedness. Their contract as it has been construed provides that they shall have a continuing lien upon the real property within said district, and by no method of transfer of the district irrigation system should they be defeated in such continuing right. Assuming, then, that the indebtedness of the plaintiffs has not been wiped out by the dissolution proceeding, and that their existing claims represented by the judgments are liens upon such lands, and that they have the right to have continuing assessments and levies made until such indebtedness is paid, as stated in the Norris Case, supra, it would appear to be the duty of a court of equity to set in motion such machinery as would fairly tend to discharge such obligations. Manifestly, as before stated, this could not be done with the irrigation system itself in the hands of independent holders, feeling themselves no doubt free and clear of such outstanding indebtedness, with the landowners securing their water from the new company whose officials are in no way bound to make the nec-

essary assessments contemplated by the bond contract. In this complicated situation it would seem that only a reconstruction of the irrigation district, in so far as it may be necessary to carry out the obligations of the district, will be the only remedy available. It is truly a deplorable situation with land-owners struggling under the new organization to make both ends meet, and likewise a hardship upon new bondholders who have invested their money in the bonds of the reorganized irrigation district, but all took their chances with imputed knowledge of the frailties of the reorganization plan. Neither does this feeling afford relief to plaintiffs from the inequalities and inequities of the situation which confront them, of having been knowingly left out in the calculations of the promoters of the new enterprise while holding valid and subsisting claims. I see no unsurmountable obstacle for a court of equity in carrying out the views herein expressed. For example, three commissioners or receivers may be appointed by the court to take charge of the irrigation system and administer the affairs of the district for the use and benefit of the creditors whose claims have not been liquidated at the time of the dissolution proceeding; said commissioners may administer the affairs of the district under the rules and regulations which prevailed at the time the Otero irrigation district was functioning, and such levies as they may make upon the lands shall be first and superior liens to all other claims which arose subsequent to such dissolution proceeding; and that for the purpose aforesaid a lien shall exist in favor of the plaintiffs upon the system until such time as such indebtedness shall be liquidated. There is no reason apparent to the court that any person or organization should be unduly penalized for anything done in the premises. The only equitable action which seems possible under the circumstances is for the court, as nearly as possible through its duly constituted representatives, to restore the system to its original condition as near as may be pending the liquidation of plaintiff's indebtedness. This may involve the restoration of such assets of the district as have found their way into the hands of the defendants in this case and likewise the restoration of the other indebtedness which was then held by some of the defendants or others, to the end that the entire unliquidated indebtedness of the district existing at the time of the dissolution may be recognized and discharged in the manner provided by law.

This conclusion will give ample opportunity for both plaintiffs and defendants to take this proceeding by cross-appeals to a higher court, where I am strongly impressed it rightfully belongs. The personnel of such commissioners or receivers to be appointed by the court may be selected through collaboration of court and counsel, and findings of fact and conclusions of law, together with an appropriate decree, may be presented within thirty days from the date of this memorandum, in which it may be provided that, unless within ninety days of the date of such decree the obligations of the plaintiffs shall be paid or otherwise discharged, such commissioners shall proceed to take charge of and administer such irrigation district and system under the direction of the court until such time as such indebtedness may be discharged, with the jurisdiction of the court over the matter to continue for the general purpose of securing relief to plaintiffs. To counsel is assigned the task of assembling for finding figures, dates, and facts in detail, the same to comport as near as may be with the general views of the court herein expressed. The costs of this case shall be awarded to plaintiffs, and exceptions may be reserved to the parties in such manner as they may deem meet and proper.